(No. 82942.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. VINCENT DiVINCENZO, Appellant.

*Opinion filed June 18, 1998.—Rehearing denied October 5, 1998.*

HEIPLE, J., dissenting.

Lawrence C. Marshall, of Chicago (Timothy P. O'Neill, of counsel), for appellant.

James E. Ryan, Attorney General, of Springfield, and Anthony Peccarelli, State's Attorney, of Wheaton (Barbara A. Preiner, Solicitor General, and William L. Browers and Lisa Anne Hoffman, Assistant Attorneys General, of Chicago, of counsel), for the People.

Robert B. Haida, of Belleville, and Joan M. Kripke, of Elgin, for *amicus curiae* Illinois State's Attorneys Association.

JUSTICE NICKELS delivered the opinion of the court:

After a jury trial in the circuit court of Du Page County, defendant was convicted of first degree murder (720 ILCS 5/9—1(a)(2) (West 1994)) and sentenced to 26 years' imprisonment. The appellate court affirmed (No. 2—95—1454 (unpublished order under Supreme Court Rule 23)). We allowed defendant's petition for leave to appeal (166 Ill. 2d R. 315).

## BACKGROUND

The case was presented to the grand jury on June 16, 1993. The State presented evidence showing that defendant had beaten the victim, Joseph Novy, following an argument between the two young men on May 27, 1993. At some point during the argument, defendant punched and kicked the victim several times, resulting in the victim's death. Assistant State's Attorney Creswell asked the grand jury to return an indictment charging defendant with first degree murder. The State sought to indict defendant on the theory that he acted with the knowledge that his acts created a strong probability of death or great bodily harm. See 720 ILCS 5/9—1(a)(2) (West 1994). It did not ask the grand jury to indict defendant for first degree murder based on an intent to kill. See 720 ILCS 5/9—1(a)(1) (West 1994). After deliberating, the grand jury stated that it would return a "no bill" as

to first degree murder but would consider lesser charges after adjourning for lunch. Creswell told the grand jury that she would return in the afternoon with a "no bill" form.

During the lunch break, one of the grand jurors approached a Westmont police officer and told the officer that the grand jury had returned a "no bill" because the State failed to prove that defendant had an intent to kill. The police officer reported this conversation to the prosecutors. During the afternoon session, Assistant State's Attorney Kinsella asked the grand jury to reconsider its decision not to indict defendant for first degree murder. Kinsella discussed the difference between first degree murder and involuntary manslaughter. The grand jury then returned a "true bill" on first degree murder.

Defendant filed a motion to dismiss the indictment based on the violation of secrecy and prosecutorial misconduct. The circuit court conceded that communication had occurred between the grand juror, police officer, and prosecutors. The circuit court determined, however, that the grand jury transcript showed no undue coercion or misrepresentation of law constituting prosecutorial misconduct. Accordingly, the circuit court denied defendant's motion to dismiss the indictment.

Trial commenced on June 9, 1995. At the time of the fight on May 27, 1993, defendant was 18 years old and a senior at Addison Trail High School. In the evening of May 27, defendant was a passenger in a vehicle driven by his friend, Daniel Frasca. While stopped at a red light, defendant observed the victim driving a Geo Tracker. Defendant testified that he disliked the victim because the victim had dated defendant's girlfriend several years earlier.

While stopped at the red light, defendant noticed the victim staring at him and this upset defendant. Defen-

dant told Frasca to follow the victim's vehicle. Defendant and Frasca followed the victim's vehicle for some time as it traveled along several different streets. Eventually, the victim turned his vehicle into the driveway of a friend's home. At this time, defendant told Frasca to stop the car. Defendant and the victim exited their respective vehicles and met each other on the grass parkway near the driveway.

Defendant testified that the two men started arguing and swearing at one another. The victim asked what defendant was doing and whether defendant still had a grudge about his girlfriend. Defendant said that he was still upset about the victim's relationship with the girlfriend. Defendant asked why the victim had stared at him. The victim said he did not know what defendant was talking about.

Defendant testified that the victim placed his hand on defendant's chest and pushed defendant backwards. Defendant immediately pushed the victim's hand away from his chest. Defendant testified that the victim stepped back with his right foot and clenched his fist, as if getting ready to throw a punch. In response, defendant hit the victim in the mouth with the open palm of his hand. This blow caused the victim to stumble backwards, and the victim raised his hands to his face in a defensive posture. Defendant testified that he then punched the victim on the side of the face. This blow knocked the victim to the ground. Defendant testified that he told the victim to stay on the ground.

In defendant's recorded police statement, he stated that after the victim had fallen to the ground, he kicked the victim once in the stomach. At trial, defendant denied that he kicked the victim but testified that he kneed the victim once in the side. Defendant testified that he got into Frasca's vehicle and left. Defendant did not think that the victim was injured seriously.

Daniel Frasca also testified. Much of his testimony was consistent with defendant's. Defendant told Frasca to follow the Geo Tracker because defendant knew the individual in the vehicle. When the victim pulled into a driveway, defendant told Frasca to stop their car. Frasca testified that the three of them all exited their respective vehicles. After exiting the vehicles, defendant and the victim started arguing and swearing at each other. At some point, defendant and the victim began to shove each other. The victim stepped back with his right foot and clenched his right fist. Defendant slapped the victim and punched him, knocking him down to the ground. Defendant told the victim to stay down. Frasca testified that he and defendant left in their vehicle. Frasca did not see defendant kick the victim.

Janet Berens, a neighbor, testified that she witnessed the incident from the window of her home, which was next door. She testified that she saw Frasca, defendant, and the victim standing outside just before 7 p.m. She testified that she saw defendant move his arms. After this movement, she saw the victim fall to the ground. Berens testified that, while the victim was lying motionless on the ground, defendant kicked the victim three times, twice to the back and once to the head. Following the third kick, defendant and Frasca got into their vehicle and left. She testified that the entire incident was over in seconds.

Janet Berens' husband, Leon Berens, also testified at trial. He testified that he was watching television at the time of the incident. His wife told him that a boy was being badly beaten outside. Leon Berens testified that he ran out of his house and yelled at the boys. When he yelled, defendant and Frasca got into Frasca's vehicle and left. Leon Berens approached the victim to check on his condition. The victim was not moving and was bleeding from his nose and mouth.

Janet and Leon Berens called the police and paramedics. The victim received medical attention at the scene and was transported to a hospital. Janet and Leon Berens also obtained the license plate number of Frasca's vehicle and reported it to the police. Addison police officers went to the Frasca residence and left word that they were looking for defendant and Frasca. At about 8 o'clock that evening, defendant and Frasca turned themselves in to the Addison police. Both defendant and Frasca made several statements, including recorded statements, to the police. The victim died later that evening, while defendant and Frasca were talking to the police.

The State's expert, Dr. Nancy Jones of the Cook County medical examiner's office, conducted the autopsy on the victim. She testified that there were several areas of bruising to the victim's face and that the victim's jaw was fractured on the left side and dislocated on the right side. She further testified that the victim had two bruises on his back and a bruise to the back of his head. Dr. Jones found an area of bleeding on the undersurface of the scalp corresponding to the bruised area on the back of the head. The injuries suffered by the victim were consistent with blunt trauma caused by punching and kicking. The victim had no injuries on his hands or arms indicating offensive or defensive action. Dr. Jones found no indication of an aneurysm or natural disease. In her opinion, the cause of death was a torn cerebral artery, resulting in a subarachnoid hemorrhage. This injury was caused by the extension, rotation, and tearing of structures at the base of the brain caused by blunt trauma. On cross-examination, Dr. Jones testified that this type of injury was a rare phenomenon.

Defendant called two experts to testify at trial. Dr. Robert Beatty was a specialist in neurosurgery. Dr. Beatty opined that the hemorrhaging was due to a ruptured aneurysm, not a torn cerebral artery. He did not see a

tear in a cerebral artery. A torn artery would be unlikely given the victim's trauma. Dr. Beatty testified that he did not see any indication of an aneurysm but he opined that it was the most likely possibility. He testified that the aneurysm may have destroyed itself in the process of bleeding or the pathologist may have cut through it and discarded it. Dr. Beatty further testified that the confrontation may have caused an increase in the victim's blood pressure, which, in turn, may have caused the aneurysm to rupture.

Defendant's other expert, Dr. Mark Steinberg, also testified. He had a degree in medicine and in dentistry, specializing in reconstructive facial surgery and oral surgery. He testified that a minimal amount of force was required to fracture the jaw. Dr. Steinberg further testified that a blow to the jaw does not usually cause cerebral bleeding. Such bleeding would ordinarily be caused by massive head trauma. Dr. Steinberg had no opinion as to the cause of the victim's bleeding but testified that the beating contributed to the victim's death.

After the evidence was presented, the circuit court instructed the jury on the offenses of first degree murder and second degree murder. Defendant requested that the circuit court also instruct the jury on the offense of involuntary manslaughter. The State objected to the giving of the instruction, and the circuit court denied defendant's request for the instruction. After deliberating, the jury found defendant guilty of first degree murder. The circuit court sentenced defendant to 26 years' imprisonment. The appellate court affirmed the conviction and sentence. Defendant raises three issues on appeal to this court: (1) whether defendant should receive a new trial because the circuit court failed to instruct the jury on involuntary manslaughter; (2) whether the first degree murder conviction should be reduced to involuntary manslaughter because the evidence was insufficient to sup-

port a first degree murder conviction; and (3) whether the indictment should be dismissed based on prosecutorial misconduct and violation of grand jury secrecy during the grand jury proceedings.

I. Involuntary Manslaughter Instruction

Defendant first argues that he was entitled to a jury instruction on the lesser offense of involuntary manslaughter. Defendant emphasizes that the fight between defendant and the victim was a weaponless fight and involved individuals of the same general size and strength. Defendant argues that a reasonable jury could have concluded that he was reckless with respect to his actions and did not have the mental state required for first degree murder. Accordingly, defendant argues that he is entitled to a new trial before a properly instructed jury.

Initially, we note that an instruction is justified on a lesser offense where there is some evidence to support the giving of the instruction. *People v. Jones*, 175 Ill. 2d 126, 132 (1997). If there is some credible evidence in the record that would reduce the crime of first degree murder to involuntary manslaughter, an instruction should be given. *People v. Foster*, 119 Ill. 2d 69, 87 (1987); *People v. Ward*, 101 Ill. 2d 443, 451 (1984). Where some evidence supports the instruction, the circuit court's failure to give the instruction constitutes an abuse of discretion. *Jones*, 175 Ill. 2d at 132.

The basic difference between involuntary manslaughter and first degree murder is the mental state that accompanies the conduct resulting in the victim's death. *Foster*, 119 Ill. 2d at 87. Involuntary manslaughter requires a less culpable mental state than first degree murder. Under section 9—1(a)(2) of the Criminal Code of 1961, a defendant commits first degree murder when he kills an individual without lawful justification and he knows that his acts create a strong probability of death

or great bodily harm. 720 ILCS 5/9—1(a)(2) (West 1994). In contrast, a defendant commits involuntary manslaughter when he performs acts that are likely to cause death or great bodily harm to another and he performs these acts recklessly. 720 ILCS 5/9—3(a) (West 1994). Recklessness is statutorily defined:

> "A person is reckless or acts recklessly, when he *consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow,* described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." (Emphasis added.) 720 ILCS 5/4—6 (West 1994).

In general, a defendant acts recklessly when he is aware that his conduct might result in death or great bodily harm, although that result is not substantially certain to occur. See 1 W. LaFave & A. Scott, Substantive Criminal Law § 3.7(f), at 336-37 (1986); 1 T. Decker, Illinois Criminal Law 82 (1986). Reckless conduct generally involves a lesser degree of risk than conduct that creates a strong probability of death or great bodily harm. See *People v. Davis,* 35 Ill. 2d 55, 60 (1966); *People v. Rosenberger,* 125 Ill. App. 3d 749, 763 (1984).

In the instant case, the appellate court found that an instruction on involuntary manslaughter was not warranted. The court stated that defendant had purposely initiated the altercation. Defendant punched the victim and kicked him while he was lying on the ground. Although the appellate court acknowledged that defendant had denied kicking the victim, it stated that Dr. Jones' testimony supported the evidence that defendant kicked the victim several times while the victim was lying on the ground. The appellate court therefore concluded that defendant's conduct was not reckless, but was willful, vicious, and brutal.

Although not dispositive, certain factors may suggest

whether a defendant acted recklessly and whether an involuntary manslaughter instruction is appropriate. These include: (1) the disparity in size and strength between the defendant and the victim (see, *e.g.*, *People v. Terrell*, 132 Ill. 2d 178, 204 (1989); *People v. Brackett*, 117 Ill. 2d 170, 180 (1987)); (2) the brutality and duration of the beating, and the severity of the victim's injuries (see, *e.g.*, *Foster*, 119 Ill. 2d at 88; *Ward*, 101 Ill. 2d at 451-53); and (3) whether a defendant used his bare fists or a weapon, such as a gun or a knife (see, *e.g.*, *Brackett*, 117 Ill. 2d at 180; *People v. Jefferson*, 260 Ill. App. 3d 895, 912-13 (1994)). In addition, an involuntary manslaughter instruction is generally not warranted where the nature of the killing, shown by either multiple wounds or the victim's defenselessness, shows that defendant did not act recklessly. *People v. Trotter*, 178 Ill. App. 3d 292, 298 (1988). Whether an involuntary manslaughter instruction is warranted depends on the facts and circumstances of each case.

We disagree with the appellate court and find that defendant was entitled to an involuntary manslaughter instruction in this case. Some evidence was presented at trial that would support a finding of recklessness and involuntary manslaughter. There was no disparity in size and strength between defendant and the victim. The altercation was of very short duration. The three experts all testified that the injury resulting in the victim's death was a rare phenomenon. Defendant's experts also testified that the torn cerebral artery was unlikely given the severity of the external injuries. Defendant did not use a weapon, such as a gun or knife. In addition, there was disputed testimony as to whether defendant kicked the victim while the victim was lying on the ground. Some of this evidence could have suggested to the jury that defendant acted recklessly but without knowledge of a strong probability of death or great bodily harm. Al-

though the evidence suggests that defendant may have deliberately provoked the confrontation, a defendant may act recklessly where he commits deliberate acts but disregards the risks of his conduct. See 720 ILCS 5/4—6 (West 1994).

It is the function of the jury to evaluate the credibility of the witnesses and to make inferences based on the evidence presented. Determination of defendant's mental state may be inferred from the circumstantial evidence (*Terrell*, 132 Ill. 2d at 203-04), and this task is particularly suited to the jury. Based on the evidence, the jury could reasonably have concluded that defendant, by punching and kicking the victim, consciously disregarded a substantial and unjustifiable risk of death or great bodily harm but did not have the mental state required for first degree murder. We find the cases relied on by the appellate court factually distinguishable. See *People v. Rodgers*, 254 Ill. App. 3d 148, 151-54 (1993), *vacated on other grounds*, 156 Ill. 2d 564 (1994), *readopted in pertinent part*, 265 Ill. App. 3d 1, 2 (1994) (involuntary manslaughter instruction not warranted where the defendant punched the victim in the head numerous times while the victim was sleeping and after the defendant had repeatedly threatened to kill the victim); *People v. Reeves*, 228 Ill. App. 3d 788, 798-800 (1992) (no involuntary manslaughter instruction warranted where there was a great disparity in size between the 250-pound defendant and the 168-pound victim). Accordingly, the jury here should have had the option of finding defendant guilty of involuntary manslaughter.

## II. Sufficiency of the Evidence

In a related argument, defendant argues that the evidence presented by the State was not sufficient to support a verdict of first degree murder. Defendant argues that the evidence in this case could support only a verdict of involuntary manslaughter, not first degree murder. If

the evidence presented at trial was insufficient to support first degree murder, the conviction should be reversed outright and the State would be barred from again prosecuting defendant for first degree murder. Where the State has failed to provide sufficient evidence, it will not be given a second opportunity to gather additional evidence, based on principles of double jeopardy. See *Burks v. United States*, 437 U.S. 1, 10-11, 57 L. Ed. 2d 1, 9-10, 98 S. Ct. 2141, 2147 (1978); *People v. Taylor*, 76 Ill. 2d 289, 309 (1979). Accordingly, defendant argues that we should not remand this cause for a new trial but should reduce the first degree murder conviction to involuntary manslaughter.

When a defendant challenges the sufficiency of the evidence presented at trial, this court will not retry the defendant. *Brackett*, 117 Ill. 2d at 176. " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); see also *People v. Campbell*, 146 Ill. 2d 363, 374 (1992). Whether a defendant is guilty of first degree murder or involuntary manslaughter is ordinarily a question for the trier of fact. *People v. Bartall*, 98 Ill. 2d 294, 307 (1983).

As stated, inferences as to defendant's mental state are a matter particularly within the province of the jury. There was evidence supporting first degree murder. An eyewitness testified that she saw defendant kick the victim three times while he was lying motionless on the ground, once in the head. Dr. Jones testified that the victim had two bruises on his back and one on his head. After considering the credibility of these and other witnesses, a jury could reasonably infer that defendant acted

with the knowledge that his acts created a strong probability of death or great bodily harm. An individual who kills another by punching and kicking can be convicted of first degree murder if he acts with the requisite mental state. After viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of first degree murder beyond a reasonable doubt. The ultimate determination of defendant's guilt as to any offense must be made by the trier of fact at a new trial.

### III. Grand Jury Proceedings

Finally, defendant argues that the prosecutors engaged in misconduct during the grand jury proceedings. He argues that the prosecutors improperly asked the grand jury to reconsider after it had returned a "no bill" on the charge of first degree murder. He further argues that the prosecutors improperly learned of the grand jury's secret deliberations and used this knowledge to ask the grand jury to reconsider. Defendant also contends that the prosecutors misstated the law and exerted undue pressure on the grand jury to return a "true bill" on first degree murder. Defendant therefore argues that the indictment should be dismissed. Alternatively, defendant argues that he is entitled to an evidentiary hearing to determine if there was any misconduct.

Initially, we note that the grand jury determines whether probable cause exists that an individual has committed a crime, thus warranting a trial. 725 ILCS 5/112—4 (West 1994); *People v. Fassler*, 153 Ill. 2d 49, 60 (1992). Pursuant to statute, the grand jury proceedings are conducted in secrecy. See 725 ILCS 5/112—6 (West 1994). The State's Attorney's office plays a substantial role in the grand jury proceedings and serves as advisor to the grand jury. *People v. Linzy*, 78 Ill. 2d 106, 110 (1979). Prosecutors inform the grand jury of the proposed charges and the pertinent law. See 725 ILCS 5/112—4 (West 1994).

Challenges to grand jury proceedings are limited. In general, a defendant may not challenge the validity of an indictment returned by a legally constituted grand jury. *People v. Rodgers*, 92 Ill. 2d 283, 287 (1982); *People v. Seehausen*, 193 Ill. App. 3d 754, 759 (1990). A defendant may not seek to challenge the sufficiency of the evidence considered by a grand jury if some evidence was presented. *People v. J.H.*, 136 Ill. 2d 1, 17-18 (1990); *Rodgers*, 92 Ill. 2d at 290. A defendant may, however, challenge an indictment that is procured through prosecutorial misconduct. *Fassler*, 153 Ill. 2d at 58; *Rodgers*, 92 Ill. 2d at 287; *Linzy*, 78 Ill. 2d at 109-10. In reviewing challenges to an indictment, courts will generally limit consideration to the transcript of the grand jury proceedings. *Linzy*, 78 Ill. 2d at 109; *People ex rel. Sears v. Romiti*, 50 Ill. 2d 51, 59 (1971).

From the grand jury transcript, it is clear that the grand jury voted to return a "no bill" during the morning session. One of the grand jurors talked about the deliberations to a police officer during the lunch break, and the police officer informed the prosecutors of this conversation. In the afternoon session, Assistant State's Attorney John Kinsella told the grand jurors that he was concerned that they might not have a clear understanding of the law. He told the grand jurors that it was the obligation of the State's Attorney's office to properly advise them on the law. Kinsella told the grand jury that the charge presented against defendant did not require an intent to kill. Rather, the charge required that defendant committed an act knowing that it created a strong probability of death or great bodily harm. He further informed the grand jurors that they could consider the consequences of defendant's conduct in determining whether defendant had the requisite knowledge at the time of the beating. Kinsella stated that beating with fists and kicking can constitute murder. In response to

questions from grand jurors, Kinsella and Creswell explained the statutory requirements for second degree murder and involuntary manslaughter. They also gave the statutory definition of recklessness.

Two jurors indicated that they had reservations about first degree murder. One stated that he was uncertain because this case involved a fistfight and because defendant may not have meant to kill anybody. Kinsella stated that the question to be considered by the grand jury was whether there was probable cause to determine that defendant performed acts knowing that they created a strong probability of great bodily harm. The second juror stated the grand jury had already deliberated on first degree murder and had rejected it during the morning session. In response, Kinsella stated that he wanted to make sure that the question was decided based on the pertinent law. If the grand jury had applied the pertinent law to the evidence, then they had reached the proper result and should not change it. Kinsella and Creswell left cases and statutory definitions for the grand jury to consider. After deliberating, the grand jury voted a "true bill" on first degree murder.

Even if a prosecutor has engaged in misconduct and grand jury secrecy has been violated, this does not warrant dismissal of the indictment *per se*. In *Fassler*, 153 Ill. 2d 49, the grand jury indicted the defendant for aggravated criminal sexual abuse and battery. In violation of the statute governing grand jury secrecy (Ill. Rev. Stat. 1989, ch. 38, par. 112—6(a)), the victim's mother was present when her daughter testified before the grand jury. This court held that a violation of the secrecy requirement does not, by itself, require dismissal of the indictment. This court stated that a defendant must make a showing of substantial injustice before the indictment will be dismissed. *Fassler*, 153 Ill. 2d at 55; see Ill. Rev. Stat. 1989, ch. 38, par. 114—1(a)(5). Something more

than violation of the statute is required, such as a showing that the purposes of the secrecy requirement were not met, or that, in fact, the indictment was obtained as the result of undue influence or coercion. *Fassler*, 153 Ill. 2d at 56. While noting that the State's conduct was improper and not to be condoned, this court held that the violation was not sufficient to warrant dismissal of the indictment. This court further stated that the prosecutor's conduct did not rise to the level of a deprivation of due process, prejudice the defendant's right to a fair trial, or undermine the integrity of the judicial process. *Fassler*, 153 Ill. 2d at 61.

As in *Fassler*, it is clear that grand jury secrecy was violated in this case. A grand juror talked to a police officer about the deliberations of the grand jury, who in turn informed the prosecutors. The prosecutors may have acted on this information in asking the grand jury to reconsider the matter. We believe that this conduct was improper and we do not condone it.

To warrant dismissal of the indictment, however, defendant must ordinarily show that the violation of secrecy and any prosecutorial misconduct affected the grand jury's deliberations. See *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256-57, 101 L. Ed. 2d 228, 238-39, 108 S. Ct. 2369, 2374-75 (1988). Prosecutorial misconduct must rise to the level of a deprivation of due process or a miscarriage of justice. *Fassler*, 153 Ill. 2d at 58; *J.H.*, 136 Ill. 2d at 12-13; *People v. Lawson*, 67 Ill. 2d 449, 455 (1977). The due process rights of a defendant may be violated if the prosecutor deliberately or intentionally misleads the grand jury, uses known perjured or false testimony, or presents other deceptive or inaccurate evidence. See, *e.g.*, *J.H.*, 136 Ill. 2d at 13; *United States v. Hogan*, 712 F.2d 757, 759-62 (2d Cir. 1983); *People v. Barton*, 190 Ill. App. 3d 701, 708-09 (1989). An indictment may also be dismissed where the prosecutor has applied

undue pressure or coercion so that the indictment is, in effect, that of the prosecutor rather than the grand jury. See *United States v. McKenzie*, 678 F.2d 629, 631 (5th Cir. 1982). To warrant dismissal of the indictment, defendant must therefore show that the prosecutors prevented the grand jury from returning a meaningful indictment by misleading or coercing it.

In the instant case, the fact that the prosecutors asked the grand jury to reconsider is not sufficient, by itself, to warrant dismissal of the indictment. A determination of no probable cause carries no preclusive effect. See 725 ILCS 5/112—4 (West 1994). A determination of no probable cause does not generally prevent a subsequent consideration of probable cause. See *People v. Creque*, 72 Ill. 2d 515 (1978); *People v. Kent*, 54 Ill. 2d 161, 162-64 (1972); *People v. Mennenga*, 195 Ill. App. 3d 204, 209-11 (1990); *People v. Overstreet*, 64 Ill. App. 3d 287, 289 (1978). No doctrine limits a grand jury to one vote on a proposed indictment. See *United States v. Thompson*, 251 U.S. 407, 413, 64 L. Ed. 333, 342, 40 S. Ct. 289, 292 (1920); *McKenzie*, 678 F.2d at 634. Standing alone, the prosecutors' request for reconsideration does not show that the will of the grand jury was overborne by the prosecutors.

Defendant also argues that the prosecutors misstated the law to the grand jury. Specifically, defendant argues that the prosecutors improperly stated that a substantial body of case law existed that fistfights leading to death typically constitute first degree murder. In addition, defendant argues that the prosecutors misstated the mental state required for first degree murder.

After reviewing the transcript of the grand jury proceedings, we disagree. Defendant has distorted some of the prosecutors' statements by presenting them out of context. Many of the prosecutors' statements and comments are either answers to the grand jurors' questions

or elaborations on the pertinent statutory offenses and definitions. Even assuming some of the prosecutors' comments were improper, that would not warrant dismissal of the indictment. The prosecutors repeatedly and correctly stated the pertinent statutory law and definitions. The prosecutors also provided the grand jurors with case law and told them where to find the statutory definitions of recklessness and other mental states. The transcript shows an independent grand jury that questioned the statements and suggestions of the prosecutors. The grand jury exercised its own independent will and was not overborne by the prosecution. We conclude that the prosecutors did not make fundamental misstatements of the law or exercise undue coercion. See *Seehausen*, 193 Ill. App. 3d at 760; *McKenzie*, 678 F.2d at 631-34.

## CONCLUSION

Accordingly, dismissal of the indictment is not warranted here. For reasons stated in part I of the opinion, however, we find that the jury should have been instructed on involuntary manslaughter. We therefore reverse the judgments of the circuit and appellate courts and remand for a new trial.

*Appellate court judgment reversed;*
*circuit court judgment reversed;*
*cause remanded.*

JUSTICE HEIPLE, dissenting:

The trial court was correct in refusing to give an involuntary manslaughter jury instruction in this case. As the majority notes, the difference between murder and involuntary manslaughter is the mental state that accompanies conduct causing the homicide. *People v. Foster*, 119 Ill. 2d 69, 87 (1987). A defendant is guilty of first degree murder if he kills another, and while performing the acts that cause the death, knows that his acts create a strong probability of death or great bodily harm. 720

ILCS 5/9—1(a)(2) (West 1994). A defendant is guilty of involuntary manslaughter, however, if the actions are likely to cause death or great bodily harm and are performed recklessly. 720 ILCS 5/9—3(a) (West 1994). "Recklessness" is a conscious disregard of the substantial and unjustifiable risk that a result will follow a person's actions. 720 ILCS 5/4—6 (West 1994).

A jury is to be instructed on manslaughter where there is credible evidence in the record which would support that charge. *People v. Ward*, 101 Ill. 2d 443, 451 (1984). Such instruction should *not* be given, however, if there is no evidence which would reduce the crime to involuntary manslaughter. *Ward*, 101 Ill. 2d at 451; *People v. Simpson*, 74 Ill. 2d 497, 501 (1978). The evidence in this case does not indicate reckless behavior in any way; rather, it shows that defendant acted with intent to cause great bodily harm. Defendant held a grudge against the victim, and had expressed hatred of him in the past. While out driving, defendant spotted the victim at a traffic light and followed him. A verbal altercation ensued after the victim pulled into a friend's driveway and exited his car. The victim moved to shove defendant, whereupon defendant slapped and punched the victim. The punch was forceful enough to break the victim's jaw and knock him to the ground. While the victim lay motionless on the ground, defendant kicked him three times, twice in the back and once in the head. A witness testified that these kicks were forceful. From these blows or a combination thereof, the victim died. In sum, defendant initiated the confrontation by stalking the victim, hit him, broke his jaw, kicked him forcefully while he was down, and left him lying on the ground. His actions were premeditated, purposeful, vicious and brutal; and it is apparent that the defendant both intended to inflict great bodily harm on the victim and that he knew or should have known that his actions created a strong probability of great bodily harm. This was not mere recklessness.

Accordingly, it was not error for the trial court to refuse an involuntary manslaughter instruction. The murder conviction should be affirmed.