2019 IL App (2d) 180354
No. 2-18-0354
Opinion filed April 11, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 15-CF-2902 |
| LEROY NOLAN JR., | ) ) ) | Honorable Ronald J. White, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices McLaren and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    An indictment charged defendant, Leroy Nolan Jr., with possessing cannabis with the intent to deliver (720 ILCS 550/5(f) (West 2014)). He moved to dismiss the indictment, contending that the prosecutor had presented the grand jury with false or misleading evidence. The State appeals the order granting the motion, contending that the trial court erred in relying solely on defendant's uncorroborated testimony. We reverse and remand.

¶ 2    The motion to dismiss included a transcript of the grand-jury proceedings. The only witness before the grand jury was Winnebago County deputy sheriff Brad Kaiser. In response to leading questions by the prosecutor, Kaiser agreed that on December 15, 2015, the sheriff's department executed a search warrant at 523 South Rockford Avenue, where they encountered

Monica Dowthard. She explained that defendant frequented the home's porch, garage, and basement.

¶ 3   On the porch, officers found a red container with approximately 1 pound of a green leafy substance, three sealed bags with 3.8 pounds of a similar substance, a blue cooler bag containing three bags with 86 grams of a similar substance, and eight bags with 274 grams of a similar substance. Each sample tested positive for marijuana. Deputies also recovered two cell phones, a surveillance camera, and a surveillance camera receiver. Kaiser opined that these items evinced intent to deliver the cannabis.

¶ 4   Kaiser said that he interviewed defendant on December 17, 2015. Defendant told Kaiser that his janitorial business was "not enough," so he started to get marijuana in 10-pound batches from an old friend, to sell on the streets. He stored the "weed" at 523 South Rockford Avenue.

¶ 5   In support of his motion, defendant testified that he would "go by" Dowthard's house "at times." Dowthard called him on December 15, 2015, and said that her house had been raided. She said that a sheriff's detective wanted to speak to him because Dowthard had told the detective that the marijuana belonged to defendant. Defendant called Kaiser and later met with him at the Winnebago County Justice Center.

¶ 6   Defendant denied making the statements Kaiser attributed to him and he described the conversation as follows. Kaiser implied that defendant was selling cocaine. He proposed bugging defendant's cell phone, with the intention of implicating defendant's friends with whom he sold cocaine and marijuana. Defendant denied knowing anyone who was selling cocaine and he insisted that his only interest was trying to improve his janitorial business.

¶ 7   Defense counsel argued that defendant's testimony was "credible" and "uncontradicted," leading to the conclusion that Kaiser's grand-jury testimony was false. The trial court granted

defendant's motion, stating that it had "only heard from one witness." The court noted that Kaiser was not called to testify and that it would not "speculate" about what his testimony would have been. The court further noted that, in reviewing the transcript, "it's like the prosecutor in this case testified." The court acknowledged that leading questions are permitted in grand-jury proceedings, but it commented that "sometimes the leading questions may get out of hand and present a false indication as to what actually happened." The court observed that the State could have called Kaiser to say " 'He really told me that' " but that it did not. The State timely appeals.

¶ 8    The State contends that the trial court erred in dismissing the indictment solely because defendant's testimony contradicted Kaiser's grand-jury testimony. The State argues that dismissing an indictment for prosecutorial misconduct is a narrow exception to the rule that a defendant may not challenge the sufficiency of the evidence before the grand jury. Here, the State asserts, the grand-jury testimony was not demonstrably false and defendant's alternate version of his conversation with Kaiser presents a routine factual issue to be decided by a jury at trial. Defendant responds that no case limits how a defendant may demonstrate that grand-jury testimony was false.

¶ 9    The grand jury determines whether probable cause exists that an individual has committed a crime, thus warranting a trial. 725 ILCS 5/112-4 (West 2014); *People v. DiVincenzo*, 183 Ill. 2d 239, 254 (1998), *abrogated on other grounds by People v. McDonald*, 2016 IL 118882. Interposing a grand jury between the individual and the government limits indictments for higher crimes to those offenses charged by a group of one's fellow citizens acting independently of the prosecution and the court. *United States v. Hogan*, 712 F.2d 757, 759 (2d Cir. 1983). In this independent position, a grand jury performs two distinct roles. It "serves as an accuser sworn to investigate and present for trial persons suspected of wrongdoing. At the same time—and equally

important—it functions as a shield, standing between the accuser and the accused, protecting the individual citizen against oppressive and unfounded government prosecution." *Id.*

¶ 10    To preserve the grand jury's independence in performing these vital roles, challenges to grand-jury proceedings are limited. *DiVincenzo*, 183 Ill. 2d at 255.   In general, a defendant may not question the validity of an indictment returned by a legally constituted grand jury.   A defendant may not challenge the sufficiency of the evidence considered by a grand jury as long as some evidence was presented. *Id.*   "A defendant may, however, challenge an indictment that is procured through prosecutorial misconduct." *Id.*   A defendant's due-process rights can be violated if the prosecutor deliberately misleads the grand jury, knowingly uses perjured or false testimony, "or presents other deceptive or inaccurate evidence." *Id.* at 257.   However, the denial of due process must be " 'unequivocally clear' " and the prejudice " 'actual and substantial.' " *People v. Holmes*, 397 Ill. App. 3d 737, 741 (2010) (quoting *People v. Oliver*, 368 Ill. App. 3d 690, 695 (2006)).   In reviewing a challenge to an indictment, a court will generally limit its consideration to the transcript of the grand-jury proceedings. *DiVincenzo*, 183 Ill. 2d at 255.

¶ 11    The relatively few cases involving the dismissal of an indictment for presenting false or misleading testimony to the grand jury have not discussed what is necessary to prove that the testimony was in fact false or misleading.   The State contends that something more is necessary than a defendant's testimony contradicting some aspect of the grand-jury testimony.   Otherwise, the State argues, "before [a] trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury." *Costello v. United States*, 350 U.S. 359, 363 (1956).

¶ 12    The State points out that the reported cases have uniformly involved some type of objective proof that the grand-jury testimony in question was false or misleading.   In *Oliver*, this court

affirmed the dismissal of an indictment on due-process grounds. There, officer Micah Cress told the grand jury that he saw the defendant make several hand-to-hand transactions with other people and implied that he saw cocaine being exchanged. The State later admitted that Cress did not personally witness the transactions at all but was testifying based on other officers' reports. Moreover, those officers could not see what was being exchanged during the transactions. *Oliver*, 368 Ill. App. 3d at 691-92. We held that the State's presentation of deceptive evidence denied the defendant due process even if the deception was unintentional. *Id.* at 696.

¶ 13    In *People v. Hunter*, 298 Ill. App. 3d 126 (1998), the defendant was indicted for involuntary manslaughter after a couch he and a codefendant were moving fell from a second-story window and struck a pedestrian who ultimately died as a result. While an officer was testifying, a grand juror asked him whether the defendant had ever given a statement that the couch had slipped. The officer said that he had not but, in fact, the defendant had given the police a written statement that a rope used to lower the couch had slipped, causing the couch to fall. *Id.* at 128. We thus affirmed the dismissal of the indictment.

¶ 14    In *People v. Mattis*, 367 Ill. App. 3d 432, 436-37 (2006), an officer's grand-jury testimony differed from his subordinate's report on which his testimony was purportedly based. We reversed the dismissal, however, finding that the defendant was not prejudiced. *Id.* at 436.

¶ 15    In *Oliver*, the State admitted that the testimony was misleading. In *Hunter* and *Mattis*, the testimony was objectively refuted by contradictory written statements. Here, by contrast, nothing contradicted Kaiser's grand-jury testimony except defendant's testimony.

¶ 16    The State likens defendant's burden here to that necessary to obtain a *Franks* hearing. See *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Under *Franks*, if a defendant makes a "substantial preliminary showing" that a false statement was deliberately or recklessly included in

an affidavit for a search warrant, and if the allegedly false information was critical to the probable-cause showing, the defendant is entitled to a hearing on whether the information was in fact false. *Id.*

¶ 17    In *People v. Lucente*, 116 Ill. 2d 133 (1987), the court considered what was needed to make the "substantial preliminary showing." The court balanced the interest in permitting defendants a meaningful chance to make the required showing against the possibility of opening the floodgates to spurious challenges. The court held that "*Franks* demands something more than a request, and even more than a defendant's unsubstantiated denial." *Id.* at 151. If no more were required, "*Franks* hearings would be held in every case." *Id.*

¶ 18    The State argues that the same concerns are present here. In response, defendant correctly points out that the cases discussed above do not prescribe any particular method by which the showing here must be made. However, he cites no case holding that a defendant's "unsubstantiated denial" is sufficient. Indeed, neither party cites a case, and our research has not uncovered one, discussing the quantum of proof necessary to establish a due-process violation based on false or misleading testimony.

¶ 19    We leave for another day whether *Franks* provides the applicable standard for establishing due-process violations. However, we agree with the State that, at least under the facts here, defendant's testimony did not warrant dismissing the indictment. The only evidence that Kaiser's grand-jury testimony was false was defendant's self-serving testimony in which he recalled the conversation with Kaiser differently. Unlike in the cases discussed above, no admission by the State or documentary evidence established that the grand-jury testimony was inaccurate.

¶ 20    To allow a challenge such as defendant's here would allow virtually any defendant to move to dismiss the indictment, deny having committed the offense, and argue that any contrary

testimony before the grand jury was necessarily false. A defendant could always obtain a second bite at the probable-cause apple at a hearing at which the defendant would likely be the only witness.

¶ 21 The trial court noted that the State could have called Kaiser at the hearing. However, requiring the State to re-present its case at the hearing would negate the grand jury's historic independence in performing its vital functions (*Hogan*, 712 F.2d at 759), making the court the ultimate arbiter of probable cause.

¶ 22 Moreover, as the State points out, such a practice would also usurp the role of the petit jury. At bottom, the court's decision here was based on its finding that defendant's testimony at the hearing was credible. The State is correct that it is the jury's function to resolve factual disputes, assess witness credibility, and determine the sufficiency of the evidence. *People v. Bradford*, 106 Ill. 2d 492, 502 (1985).

¶ 23 The trial court's real concern seems to have been the perfunctory way the case was presented to the grand jury, the court observing that the prosecutor appeared to be testifying. We are not unsympathetic to the trial court's frustration with the prosecution's cursory grand-jury presentation. Indeed, we note that, after giving his name and job title, Kaiser spoke only 29 words to the grand jury, merely agreeing with the prosecutor's leading questions. However, defendant does not argue that this is an independent basis on which to affirm the dismissal. Courts confronted with the issue previously have held that leading questions are permissible in grand-jury proceedings. See *People v. Hirsch*, 221 Ill. App. 3d 772, 779 (1991) (no "requirement that testimony before a grand jury cannot consist of monosyllabic responses").

¶ 24 One federal circuit court, when confronted with such a challenge, rejected it, noting the Supreme Court's refusal to allow a defendant to challenge the competency of evidence before a

grand jury. The court observed, "However questionable the practice may have been in presenting the case to the grand jury, it must be remembered that a duly-sworn witness actually testified to the factual correctness of all the questions asked him by the prosecutor." *United States v. Brown*, 872 F.2d 385, 388 (11th Cir. 1989).

¶ 25     The judgment of the circuit court of Winnebago County is reversed and the cause is remanded for further proceedings.

¶ 26     Reversed and remanded.