2022 IL App (2d) 210740
No. 2-21-0740
Opinion filed September 23, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 19-CF-2828 |
| DANIEL D. BASILE III, | ) ) ) | Honorable Brendan A. Maher, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Hutchinson and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1     The State appeals from the judgment of the circuit court of Winnebago County dismissing a grand jury indictment against defendant, Daniel D. Basile III. Because the trial court did not err in dismissing the indictment, we affirm.

¶ 2                                   I. BACKGROUND

¶ 3     Defendant was charged by complaint with one count of criminal sexual assault based on his having sexually penetrated the victim, Jane Doe, knowing that she was unable to understand the nature of the act or to give knowing consent (720 ILCS 5/11-1.20(a)(2) (West 2018)).

¶ 4     Before the grand jury, the State presented only the testimony of Detective Vince Kelly of the Rockford Police Department. He described what Doe told him about the incident. Doe had

gone to a bar with a group of friends, including defendant. After drinking at two bars, Doe was "falling down." Defendant and some friends helped Doe get to defendant's car. Defendant then drove Doe home and went into her home with her. Doe then fell onto a couch in the mudroom and told defendant that she was "good" and that he could leave. Doe told Kelly that she could recall defendant removing her pants and underwear and having sexual intercourse with her in the mudroom. According to Kelly, Doe reported being in and out of awareness because of her intoxication. Doe could not remember how her shoes came off. She later became aware that she was in her bedroom and that defendant was licking her feet. Doe did not know how she got to her bedroom. Defendant then had sexual intercourse with Doe while in her bedroom. Doe denied having performed any sexual acts on defendant, because she was too intoxicated to do so. Doe knew defendant because they both worked at the Rockford Police Department.

¶ 5    At the end of Kelly's testimony, the prosecutor asked if any of the grand jurors had questions for Kelly. One juror asked, "Besides that [Doe] said that this occurred, was there any other evidence that [defendant] actually did this to her?" Kelly answered that he did not completely understand the question. The juror then asked, "You said that [Doe] was extremely intoxicated, correct?" Kelly responded, "Correct." The juror then asked, "How do we know that the person [Doe] claims did this to her did it to her?" Kelly answered, "He told me he did." The juror then commented, "That is all I needed to know."

¶ 6    The grand jury returned an indictment, charging defendant with two counts of criminal sexual assault based on lack of consent (720 ILCS 5/11-1.20(a)(2) (West 2018)). Defendant filed a motion to dismiss the indictment, contending that he was denied due process because Kelly's answer to the grand juror's question was false and misleading in that it conveyed to the grand jury that defendant had confessed to the crime. In support of the motion to dismiss, defendant submitted

the transcript of the grand jury proceeding and a video-recorded interview of defendant in which he (1) told Kelly that the sexual encounter with Doe was consensual, (2) denied Doe's version of events as to lack of consent, and (3) denied committing criminal sexual assault.

¶ 7    In its response, the State argued that the grand juror's question pertained only to the identity of the person who had sex with Doe and not to whether the sex was consensual or nonconsensual. Correspondingly, when Kelly answered, "[Defendant] told me he did," Kelly was conveying simply that defendant admitted having sex with Doe and not that defendant confessed that the sex was nonconsensual. Thus, according to the State, Kelly's testimony was not false and misleading.

¶ 8    Following a hearing on defendant's motion to dismiss, the trial court found that the grand juror's question was not one of identity and that Kelly's answer essentially informed the grand jury that defendant had confessed to sexually assaulting Doe. That answer was false and misleading, the court determined, because defendant had not confessed to the crime in the video-recorded interview. The court held that, once Kelly gave his answer, the prosecutor was obliged to clarify whether Kelly meant that defendant had confessed to sexually assaulting Doe or had merely admitted that he was the one who had had sex with Doe. The court agreed with the State that, before the grand juror questioned Kelly, the State had presented sufficient evidence to establish probable cause. Nonetheless, the court concluded that Kelly's false and misleading testimony so prejudiced the grand jury proceeding that the indictment must be dismissed. The State, in turn, filed this timely appeal.

¶ 9                                    II. ANALYSIS

¶ 10    On appeal, the State contends that we should reverse the trial court's dismissal of the indictment because defendant failed to demonstrate that Kelly's answer to the grand juror denied defendant due process. The State specifically argues that defendant failed to establish that (1) the

State acted intentionally in presenting what defendant claims was deceptive or inaccurate evidence, (2) it was "unequivocally clear" (internal quotation marks omitted) (*People v. Nolan*, 2019 IL App (2d) 180354, ¶ 10) that the State indeed presented deceptive or inaccurate evidence, and (3) defendant suffered "actual and substantial" prejudice (internal quotation marks omitted) (*Nolan*, 2019 IL App (2d) 180354, ¶ 10) from that evidence.

¶ 11    Before we discuss the merits, we note that the State has filed a motion to strike as argumentative the section titled "Additional Facts for Consideration" in defendant's brief. Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020) requires that the facts in an appellate brief be "stated accurately and fairly without argument or comment." We agree with the State that portions of the section contain impermissible commentary, and we remind defendant's counsel that our supreme court rules "are not mere suggestions but have the force of law and should be followed." *People v. Ruhl*, 2021 IL App (2d) 200402, ¶ 56. Nonetheless, we decline to strike the entire section but instead will disregard any noncompliant portions.

¶ 12    We turn to our standard of review. Because there is no factual dispute as to the contents of the grand jury transcript or the content of defendant's statement in the video-recorded interview, we review *de novo* whether defendant was denied due process. See *People v. Oliver*, 368 Ill. App. 3d 690, 695 (2006).

¶ 13    The grand jury determines whether probable cause exists that an individual has committed a crime, thus warranting a trial. *Nolan*, 2019 IL App (2d) 180354, ¶ 9 (citing 725 ILCS 5/112-4 (West 2014)). Interposing a grand jury between the individual and the State limits indictments for higher crimes to those offenses charged by a group of one's fellow citizens acting independently of the State and the court. *Nolan*, 2019 IL App (2d) 180354, ¶ 9. In that independent role, a grand jury performs two distinct, but equally important, functions: (1) serving as an accuser sworn to

investigate and present for trial persons suspected of wrongdoing and (2) standing as a shield between the accuser and the accused, protecting the individual citizen against oppressive and unfounded prosecution. *Nolan*, 2019 IL App (2d) 180354, ¶ 9.

¶ 14    To preserve the grand jury's independence, challenges to its proceedings are limited. *Nolan*, 2019 IL App (2d) 180354, ¶ 10 (citing *People v. DiVincenzo*, 183 Ill. 2d 239, 255 (1998), *abrogated on other grounds by People v. McDonald*, 2016 IL 118882). Generally, a defendant may not question the validity of an indictment returned by a legally constituted grand jury. *Nolan*, 2019 IL App (2d) 180354, ¶ 10. Nor may a defendant challenge the sufficiency of the evidence considered by a grand jury, as long as "some evidence" was presented. *Nolan*, 2019 IL App (2d) 180354, ¶ 10. A defendant may, however, challenge an indictment that was procured through prosecutorial misconduct. *Nolan*, 2019 IL App (2d) 180354, ¶ 10. "A defendant's due process rights can be violated if the prosecutor deliberately misleads the grand jury, knowingly uses perjured or false testimony, 'or presents other deceptive or inaccurate evidence.' " *Nolan*, 2019 IL App (2d) 180354, ¶ 10 (quoting *DiVincenzo*, 183 Ill. 2d at 257). However, the denial of due process must be "unequivocally clear" and the prejudice "actual and substantial." (Internal quotation marks omitted.) *Nolan*, 2019 IL App (2d) 180354, ¶ 10.

¶ 15    We begin with the State's assertion that defendant was required to establish that the State acted intentionally in presenting deceptive or inaccurate evidence. He was not.

¶ 16    In *Oliver*, 368 Ill. App. 3d at 696, we acknowledged our comment in *People v. Hart*, 338 Ill. App. 3d 983, 991 (2003), that "there must be, at the very least, intent on the part of some State actor to materially mislead the grand jury in order to give rise to a violation of due process." We

characterized our comment in *Hart* as *dicta*. *Oliver*, 368 Ill. App. 3d at 696.[1] More importantly, we noted that such a proposition was untenable in light of *DiVincenzo* (see *DiVincenzo*, 183 Ill. 2d at 257). *Oliver*, 368 Ill. App. 3d at 696. Accordingly, in light of *DiVincenzo*, we held that the State's presentation of a police officer's deceptive testimony denied the defendant due process, regardless of whether the deception was intentional. *Oliver*, 368 Ill. App. 3d at 696. Here, we follow our more recent holding in *Oliver* and conclude that defendant was not required to establish that the State's production of deceptive or inaccurate evidence was intentional.

¶ 17 We next address whether the State did indeed present deceptive or inaccurate evidence. In answering that question, we initially note that the State does not dispute that defendant never admitted to Kelly that the sexual encounter with Doe was nonconsensual or otherwise confessed to the crime. Rather, the State asserts that Kelly's answer to the grand juror's question was neither deceptive nor inaccurate, because it did not suggest that defendant had confessed to the crime. We disagree.

¶ 18 We begin with the grand juror's questions. When the grand juror asked Kelly if there was any evidence, other than Doe's statement, that defendant "actually did this to [Doe]," Kelly responded that he did not completely understand the question. The grand juror then rhetorically

---

[1]The court in *Oliver* agreed with Justice McLaren's special concurrence in *Hart*, wherein he related: "In addition to this being *obiter dicta*, it is incorrect to require deception on the part of a State actor. The case cited by defendant and its precursors suggest the opposite conclusion. See *People v. DeCesare*, 190 Ill. App. 3d 934 (1989); *People v. Wolfe*, 114 Ill. App. 3d 841 (1983); *People v. Rivera*, 72 Ill. App. 3d 1027 (1979)." *Hart*, 338 Ill. App. 3d at 995 (McLaren, J., specially concurring).

asked if Kelly had testified that Doe was extremely intoxicated, and Kelly answered that he had. The grand juror then asked, "How do we know that the person [Doe] claims did this to her did it to her?" The State maintains that the grand juror was asking merely about the identity of the person who had sex with Doe. We disagree. The operative verbiage of the grand juror's question was not "person" but "actually did this to her" and "did it to her." That is, the grand juror was asking not what other evidence identified defendant as the person who had sex with Doe but, rather, what other evidence established the sex as sexual assault. Since the grand juror was asking whether there was any other evidence that defendant had committed the crime, Kelly's answer that defendant "told [Kelly] he did" can only be interpreted as meaning that defendant had confessed to the crime. That of course, was deceptive and inaccurate, as defendant never admitted to engaging in nonconsensual sex with Doe or otherwise confessed to the crime.

¶ 19    We next address whether defendant suffered actual and substantial prejudice from Kelly's false testimony. He did.

¶ 20    A due process violation based on prosecutorial misconduct before a grand jury is actually and substantially prejudicial only if, without it, the grand jury would not have indicted the defendant. *Oliver*, 368 Ill. App. 3d at 696-97. Thus, a court must balance the gravity and seriousness of the misconduct with the sufficiency of the evidence supporting the probable cause finding. *Oliver*, 368 Ill. App. 3d at 697. If the evidence was strong enough that the grand jury would have indicted the defendant despite the misconduct, the misconduct was not prejudicial. *Oliver*, 368 Ill. App. 3d at 697. However, if the evidence was so weak that the misconduct induced the grand jury to indict, prejudice is shown. *Oliver*, 368 Ill. App. 3d at 697.

¶ 21    Here, the evidence apart from Kelly's false testimony that defendant had confessed was not so strong that the grand jury would have indicted defendant on that evidence alone. As

discussed, Kelly was the only witness to testify. His testimony was based on statements from the victim. Because she was extremely intoxicated, her account as reported by Kelly would have been questionable at best. Indeed, the grand juror prefaced his/her question by noting Doe's extreme intoxication. Further, the grand juror then asked if there was any evidence, beyond what Doe had told Kelly, to show that defendant had committed the crime. That certainly implies that at least one grand juror did not think that there was sufficient evidence to establish probable cause. We conclude that the evidence was weak enough that the grand jury would not have indicted defendant apart from Kelly's deceptive and inaccurate testimony.

¶ 22    This conclusion becomes even clearer when we consider the intrinsic weight of Kelly's deceptive and inaccurate testimony that defendant confessed to the crime. " 'A confession is like no other evidence.' " *People v. Rebollar-Vergara*, 2019 IL App (2d) 140871, ¶ 119 (McLaren J., dissenting) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (plurality opinion)). It is probably the most probative and damaging evidence that can be admitted against a defendant. *Fulminante*, 499 U.S. at 296. It is so damaging that a jury should not be expected to ignore it despite being instructed to do so. *Rebollar-Vergara*, 2019 IL App (2d) 140871, ¶ 119 (McLaren J., dissenting) (citing *Fulminante*, 499 U.S. at 292 (White, J., dissenting, joined by Marshall, Blackmun, and Stevens, JJ.)). Our supreme court has noted that a confession is the most powerful piece of evidence that the State can offer, and its effect on a jury is incalculable. *People v. Simpson*, 2015 IL 116512, ¶ 36. Put another way, "[t]here is nothing more damning than a defendant's own words admitting his guilt." *Rebollar-Vergara*, 2019 IL App (2d) 140871, ¶ 119 (McLaren, J., dissenting).

¶ 23    Given the extremely incriminating impact of a defendant's confession, we do not doubt that the grand jury was swayed by Kelly's testimony that defendant admitted to the offense. Such

impact was manifest in the grand juror's comment that defendant's confession to Kelly was "all [the juror] needed to know." We emphasize that, no matter whether Kelly meant to deceive, the State had a duty to correct his false testimony. See *People v. Simpson*, 204 Ill. 2d 536, 552 (2001). Presumably, had the State asked follow-up questions, Kelly would have clarified that defendant had not in fact confessed to sexual assault but, rather, had merely admitted to having consensual sex with the victim. In response to defendant's motion to dismiss, the State advised the court that an assistant state's attorney unfamiliar with the case presented it to the grand jury. Such a questionable practice certainly does not excuse the failure to clarify Kelly's testimony. As it happened, the State left unabated the prejudicial impact of Kelly's deceptive and inaccurate testimony. Thus, when we balance the powerful incriminating impact of Kelly's deceptive and inaccurate testimony that defendant confessed to the crime against the weak independent evidence of his guilt, we conclude that defendant was actually and substantially prejudiced by Kelly's testimony.

¶ 24    Because the State submitted deceptive and inaccurate testimony that defendant confessed to the crime, and that testimony resulted in actual and substantial prejudice to defendant, there was a clear and unequivocal denial of due process. Thus, the trial court properly dismissed the indictment.

¶ 25                                III. CONCLUSION

¶ 26    For the foregoing reasons, we affirm the judgment of the circuit court of Winnebago County.

¶ 27    Affirmed.

---

### *People v. Basile*, **2022 IL App (2d) 210740**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 19-CF-2828; the Hon. Brendan A. Maher, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | J. Hanley, State's Attorney, of Rockford (Patrick Delfino, Edward R. Psenicka, Katrina M. Kuhn, and Steven A. Rodgers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Mark A. Byrd, of Rockford, for appellee. |

---