NOTICE
Decision filed 10/26/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200352-U

NO. 5-20-0352

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 10-CF-425 |
| | ) | |
| AARON JACKSON, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Presiding Justice Boie and Justice Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where all the issues raised in defendant's postconviction petition were either barred by *res judicata* or clearly lacked merit for other reasons, and because any argument to the contrary would lack merit, we grant defendant's appointed counsel leave to withdraw and affirm the judgment of the circuit court.

¶ 2    Defendant, Aaron Jackson, appeals the circuit court's order dismissing his petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). His appointed counsel, the Office of the State Appellate Defender (OSAD), has concluded that this appeal presents no arguably meritorious issues and, accordingly, has filed a motion for leave to withdraw as counsel and a supporting memorandum. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD has notified defendant of its motion. This court provided defendant with an opportunity to file a response, and he has done so. However, after considering OSAD's motion and supporting

1

memorandum, defendant's response, and the record on appeal, we agree that this appeal presents no arguably meritorious issue. Therefore, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4     We need not provide a lengthy recitation of the facts, which are set out in detail in the supreme court's opinion affirming defendant's conviction on direct appeal. *People v. Jackson*, 2020 IL 124112. In summary, John Thornton, the mayor of Washington Park, was shot to death on the morning of April 1, 2010. Eyewitnesses told police that they heard gunshots and saw Thornton's car crash into a tree. They saw defendant, who they identified by his nickname, "Chill," exit the car and drive away in a different vehicle. Defendant was arrested and charged with Thornton's murder.

¶ 5     Defendant's first trial ended in a mistrial. In that proceeding, Nortisha Ball testified that she saw a white car crash into a tree and a man get out. She was not sure who it was but acknowledged telling police that it was defendant. Laqueshia Jackson testified that she saw a white car hit a tree and saw defendant get out of the car and into another vehicle.

¶ 6     After the first day of trial, the prosecutor received a telephone call indicating that a police detective had offered Laqueshia Jackson a bribe to testify that he was not at the scene. In questioning outside the jury's presence, Jackson said that she was afraid to testify further because she had received threatening phone calls. She denied being offered a bribe. She denied speaking to the detective in question, Kim McAfee, although she acknowledged that he was present while she spoke to another officer. Before the jury, Jackson suffered a seizure on the witness stand.

¶ 7     The next morning, a deputy clerk said that Jackson's sister, Angela Dodd, had called to say that Jackson suffered another seizure and was in the hospital. Dodd said that she witnessed

2

McAfee telling Jackson that if she "kept her mouth shut, he would pay her off." The trial court granted the defense motion for a mistrial.

¶ 8    Defense counsel filed a motion to dismiss the charges. He argued, *inter alia*, that Special Agent Joe Bates had misled the grand jury about defendant's fingerprint found on the victim's car. It was found on the passenger side doorpost. Bates told the grand jurors that, based on the angle, it could only have been left by someone grabbing the doorpost to help him or herself out of the car. The court denied the motion and the case proceeded to a second trial.

¶ 9    There, Ball again said that she saw the person who got out of the car but could not identify him, but acknowledged telling police that it was defendant. The State was allowed to question Ball about a letter she sent to the judge saying that she was afraid and asking for protective custody in jail. She testified that she was scared because her name had been in the newspapers, but denied that she had been threatened.

¶ 10    Gilda Lott testified that she saw defendant get out of the car and run or limp to another car. A defense investigator testified that Lott told him that she did not see anything on the morning of the murder and accused defendant two years later only because she thought it would help her get out of jail.

¶ 11    Forensic evidence established that swabs taken from defendant's hands shortly after his arrest revealed gunshot residue on his left hand, jeans, and t-shirt. None of his clothing contained airbag particles. A fingerprint examiner testified that one print lifted from Thornton's car, on the passenger side doorpost, matched defendant. A small speck of blood on defendant's jeans produced a partial DNA profile which could be expected in 1 in 46,000 unrelated African-American individuals. Thornton could not be excluded as the source.

3

¶ 12    The jury found defendant guilty.  Shortly thereafter, defendant wrote a letter to the trial judge claiming that his trial counsel was ineffective.  He complained *inter alia* that counsel did not call Laqueshia Jackson at the second trial.

¶ 13    The trial court conducted a *Krankel* hearing.  See *People v. Krankel*, 102 Ill. 2d 181 (1984).  Defendant complained that counsel did not call Jackson and Dodd at the second trial.  He claimed that Jackson had recanted her earlier statement and admitted that McAfee was at the scene.  Also, Dodd claimed to have witnessed McAfee offering Jackson a bribe.  Defendant further complained that counsel did not introduce evidence that the DNA testing of the blood speck was unreliable because it was only a partial profile and that counsel did not object to the prosecutor's comments in closing argument that defendant's fingerprint on Thornton's car was "fresh," that DNA on defendant's jeans "matched" Thornton's, and that it was Thornton's blood.  Defendant further claimed that counsel failed to call two alibi witnesses that defendant had suggested.

¶ 14    Counsel explained that he decided not to call Jackson because, after her recantation, she contacted the prosecutors and indicated an " 'eagerness and willingness' " to testify for the State.  *People v. Jackson*, 2018 IL App (5th) 150274, ¶ 42.  According to counsel, defendant agreed that it was too risky to call her given the uncertainty about what she might say.  Defendant denied having this conversation.

¶ 15    Counsel said that he made a strategic decision not to focus on the DNA evidence because he did not want the jury to over-focus on it.  He did not think the prosecutor's comments in closing were improper.  Counsel was unable to locate one of the proposed alibi witnesses and decided not to talk further to the other after learning that he was drunk at the time of the shooting and unable to recall anything about it.  The court solicited a brief comment from the prosecutor before finding that no basis existed for appointing new counsel or conducting further hearings.

4

¶ 16    On direct appeal, defendant argued that (1) the evidence was insufficient to prove his guilt beyond a reasonable doubt, (2) the court erred in allowing the State to use Ball's letter, (3) the prosecutor's statements in closing argument were improper, and (4) the court should have conducted a further *Krankel* inquiry and erred by allowing the State to participate.

¶ 17    This court affirmed. We agreed that it was improper for the prosecutor to argue that the blood on defendant's jeans was "Thornton's blood" and the DNA "matched" Thornton. We also agreed that it was error to allow the State to participate in the preliminary *Krankel* inquiry. However, we found both errors harmless under the particular facts. *Jackson*, 2018 IL App (5th) 150274, ¶¶ 76, 78.

¶ 18    The supreme court granted defendant leave to appeal but ultimately affirmed his conviction. The court found the evidence sufficient to sustain the conviction. *Jackson*, 2020 IL 124112, ¶ 75. The court agreed with defendant that the prosecutor's references to the blood on defendant's pants as Thornton's and defendant's fingerprint on Thornton's car as being "fresh" were mischaracterizations of the evidence (*id.* ¶¶ 85-86) but found the errors harmless (*id.* ¶ 88). Because the errors were not prejudicial, the court rejected defendant's contention that counsel was ineffective for failing to object to these statements.

¶ 19    The court rejected defendant's arguments that his claims of ineffective assistance of counsel merited further consideration by the trial court. The supreme court found that all of defendant's claims related to matters of trial strategy which generally may not be the basis of an ineffective-assistance claim. *Id.* ¶ 106. Finally, the court concluded that the State's participation at the *Krankel* hearing, while erroneous, was harmless. *Id.* ¶ 108.

¶ 20    On September 13, 2020, defendant mailed a postconviction petition. In it, he argued that (1) Bates misled the grand jury about the evidence, including the fingerprint on the doorpost;

(2) the evidence used to obtain the indictment and convict him was insufficient; (3) counsel was ineffective for (a) failing to interview the two alibi witnesses, (b) failing to call a defense expert to rebut the State's DNA evidence, (c) failing to have an independent investigator take photos of the sightlines of various witnesses, (d) failing to obtain the victim's cellphone records, and (e) failing to seek a mistrial based on the State's turning over discovery after the trial began and based on the State's "incomplete investigation"; and (4) the prosecutor's comments in closing argument about the fingerprint and the bloodstain were reversible error.

¶ 21    On October 2, 2020, the trial court summarily dismissed the petition. The court found that the grand-jury claim was waived and the remaining claims were barred by *res judicata*. Defendant timely appeals.

¶ 22                                ANALYSIS

¶ 23    OSAD contends that the only issues defendant could conceivably raise are whether the trial court correctly dismissed defendant's postconviction petition and whether the court did so within the timeframe set by statute. OSAD concludes that neither issue has even arguable merit. We agree.

¶ 24    The Act provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated at his trial or sentencing. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). A postconviction proceeding allows inquiry only into constitutional issues that were not, and could not have been, adjudicated on direct appeal. *People v. Pabello*, 2019 IL App (2d) 170867, ¶¶ 19-20. In a postconviction petition, "[i]ssues decided on direct appeal are barred by *res judicata*; issues that could have been raised, but were not, are forfeited." *People v. Beaman,* 229 Ill. 2d 56, 71 (2008).

6

¶ 25    Initially, we agree with OSAD that defendant's claims about the sufficiency of the evidence and the prosecutor's closing argument were decided on direct appeal and, therefore, barred by *res judicata*. We note that defendant did not specifically argue on direct appeal that the evidence before the grand jury was inadequate, but the claim fails on the merits, because a defendant may not challenge the sufficiency of the evidence considered by a grand jury, so long as "some evidence" was presented. *People v. Basile*, 2022 IL App (2d) 210740, ¶ 14.

¶ 26    OSAD further contends that defendant's first argument, that Bates misled the grand jury about the position of defendant's fingerprint on the victim's car, is contradicted by the record. "A defendant's due process rights can be violated if the prosecutor deliberately misleads the grand jury, knowingly uses perjured or false testimony, or presents other deceptive or inaccurate evidence." (Internal quotation marks omitted.) *People v. Nolan*, 2019 IL App (2d) 180354, ¶ 10. Although the forensic examiner's report did not contain the additional details to which Bates referred, he and another officer testified that the examiner gave them that information in a meeting. Thus, while the officers' testimony that they received the information at an informal meeting might be questioned, there is simply no evidence that the prosecution deliberately misled the grand jury.

¶ 27    The petition alleged that defense counsel was ineffective for several reasons. The issues regarding the alibi witnesses and DNA evidence were litigated on direct appeal and thus are barred by *res judicata*. Defendant's remaining allegations are either vague and conclusory or contradicted by the record. Defendant does not explain what additional photographs of the sightlines would have shown, as the State's exhibits showed the scene from multiple angles. Defendant also does not explain what the victim's cellphone records would have shown. It is

7

virtually undisputed that the killer was inside the victim's car. Thus, if the victim talked to someone else around the time of the murder, it is unlikely that that person was the killer.

¶ 28 Finally, defendant's claim that counsel was ineffective for failing to seek a mistrial is also without merit. Although the State turned over 150 pages of notes during the trial, for which the court excoriated the prosecutor, defense counsel said that he had reviewed the material with defendant and declined the court's offer of additional time to prepare. Defendant's claim that counsel should have sought a mistrial based on "incomplete investigation" is obscure. It may be another reference to the late discovery, in which case it is contradicted by the record, or it may be another reference to the sufficiency of the evidence, in which case it is barred by *res judicata*. Thus, the court properly dismissed the petition.

¶ 29 We also agree with OSAD that the court's dismissal of the petition was procedurally proper. Defendant mailed it on September 13, 2020, and the court dismissed in on October 2, 2020, well within the 90-day time limit the statute requires. See 725 ILCS 5/122-2.1(a) (West 2020).

¶ 30 In his response, defendant claims that he was unaware that a postconviction petition may not include previously litigated issues and does not dispute that most of the issues raised in the petition were previously litigated. However, he pressed two additional claims.

¶ 31 Defendant contends that Bates told the grand jury that the blood on his pants did not belong to the victim. Other than a general invitation to see the grand jury transcripts, defendant does not point us to where Bates made such a statement. See *People v. Robinson*, 2013 IL App (2d) 120087, ¶ 15 (an appellant must present clearly defined issues to the court; this court is "not simply a repository in which appellants may dump the burden of argument and research" (internal quotation marks omitted)). The only transcript page attached to the petition contains testimony by

8

an unidentified witness that the blood was probably Thornton's. In any event, even if Bates made such a statement, a defendant may not challenge the sufficiency of the evidence before the grand jury and the evidence at trial was that the blood was likely Thornton's.

¶ 32    Defendant also contends that the forensic examiner changed his testimony from the first trial to the second trial, testifying first that blood on the passenger-side airbag could not conclusively be proven to be the victim's, but testifying at the second trial that it definitely belonged to the victim. It was definitely not defendant's blood. Defendant argues that this is significant because the blood on the airbag could have belonged to the real killer.

¶ 33    Again, defendant does not direct us to specific portions of the record where this testimony occurs. Assuming defendant is correct, this argument could have been raised on direct appeal but was not. Therefore, it is forfeited for purposes of a postconviction petition. *Beaman*, 229 Ill. 2d at 71. Defendant does not contend that appellate counsel was ineffective for failing to raise this issue. See *People v. English*, 2013 IL 112890, ¶ 33 (appellate counsel is not obligated to raise every conceivable issue on appeal, but rather is expected to exercise professional judgment to select from the many potential claims of error that might be asserted on appeal). Moreover, defendant's contention that the blood might have belonged to someone else who was the "real killer" is pure speculation. Defendant cannot plausibly claim that he was prejudiced by the failure to raise this issue at trial or on appeal.

¶ 34                            CONCLUSION

¶ 35    There is no arguably meritorious contention that the circuit court erred by dismissing defendant's postconviction petition. Therefore, we grant OSAD's *Finley* motion and affirm the circuit court's judgment.

¶ 36    Motion granted; judgment affirmed.