**2024 IL 129026**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 129026)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant v.
DANIEL D. BASILE III, Appellee.

*Opinion filed October 3, 2024.*

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Holder White and Rochford concurred in the judgment and opinion.

Justice O'Brien dissented, with opinion, joined by Justices Neville and Cunningham.

**OPINION**

¶ 1      In this State appeal, we are asked to determine whether the Winnebago County circuit court properly dismissed, with prejudice, a grand jury indictment against defendant, Daniel D. Basile III, due to the State presenting misleading testimony

before the grand jury. The appellate court affirmed the circuit court's dismissal of the indictment with prejudice. For the following reasons, we reverse the lower courts' judgments and remand for further proceedings on the grand jury's bill of indictment.

¶ 2                                                    I. BACKGROUND

¶ 3        The State initially charged defendant by filing a complaint with the circuit court alleging that defendant committed criminal sexual assault by having sexually penetrated the victim, Jane Doe, knowing that she was unable to understand the nature of the act or give knowing consent (720 ILCS 5/11-1.20(a)(2) (West 2018)). The State subsequently obtained a grand jury's bill of indictment charging defendant with two counts of criminal sexual assault.

¶ 4        To establish probable cause for the two charges in the bill of indictment, the State presented the grand jury with the testimony of one witness, Detective Vince Kelly of the Rockford Police Department. Kelly could provide the grand jury with evidence of probable cause because Doe reported the incidents that she claims were criminal sexual assaults by defendant the day after the incidents occurred, recounting the events of the evening to Kelly as she remembered them. Kelly also subsequently interviewed defendant, who admitted to having sexual intercourse with Doe but insisted it was consensual.

¶ 5        While testifying before the grand jury, Kelly informed the jurors that defendant and Doe knew each other before the incident, as they both worked at the Rockford Police Department, Doe as a civilian employee and defendant as a police officer. In October 2019, a few days before Doe's report to Kelly, defendant, Doe, and a group of friends visited a few bars for drinks. Doe reported to Kelly that she drank too much that evening to the point of "falling down." Defendant and some friends helped her get into defendant's car to be taken home. Defendant drove Doe home and went inside with her into a mudroom. Doe fell onto her couch located in the mudroom and reportedly told defendant that she was "good," meaning that defendant could leave.

¶ 6        Doe told Kelly that she recalled defendant removing her pants and underwear and having intercourse with her on the couch in the mudroom while she was in and

out of awareness due to her intoxication. Doe later became aware that she was in her bedroom while defendant was licking her feet. She did not remember how she got to her bedroom or how her shoes came off. Doe reported that defendant then had sexual intercourse with her again in her bedroom. She denied having performed any sexual act on defendant, stating that she was too intoxicated to do so.

¶ 7 At the end of Kelly's testimony before the grand jury, the prosecutor asked the jurors if they had any questions for Kelly. One juror asked, "Besides that [Doe] said that this occurred, was there any other evidence that he actually did this to her?" Kelly answered that he did not completely understand the question. The juror then asked, "You said that [Doe] was extremely intoxicated, correct?" Kelly responded, "Correct." The juror then asked, "How do we know that the person [Doe] claims did this to her did it to her?" Kelly answered, "He told me he did." The juror then commented, "That is all I needed to know."

¶ 8 The grand jury returned a bill of indictment, charging defendant with two counts of criminal sexual assault based on sexual penetration with lack of consent (*id.*), one incident occurring in the mudroom of Doe's home and one incident occurring in Doe's bedroom.

¶ 9 Defendant filed a motion to dismiss the indictment with prejudice, contending that he was denied due process because Kelly's answers to the grand juror's questions falsely suggested that he had confessed to committing criminal sexual assault. Defendant submitted a copy of Kelly's video recorded interview of defendant in which defendant (1) told Kelly that his sexual encounter with Doe was consensual, (2) denied Doe's version of events with respect to her lack of consent, and (3) denied committing criminal sexual assault.

¶ 10 The State responded that the grand juror's inquiry concerned only the issue of the identity of the person who had sex with Doe, not whether the sex was consensual or nonconsensual. Therefore, according to the State, when Kelly answered the juror's question by stating that defendant "told me he did," Kelly truthfully informed the juror that defendant admitted to having sex with Doe, not that defendant admitted to nonconsensual sex with Doe. The State, therefore, asserted that Kelly's testimony before the grand jury was not false or misleading.

¶ 11    At the conclusion of the hearing on defendant's motion to dismiss, the circuit court concluded that the grand juror's questions for Kelly did not concern the identity of Doe's assailant and that Kelly's answers to the juror's inquiry essentially informed the grand jury that defendant confessed to sexually assaulting Doe. The circuit court, therefore, concluded that Kelly's answers to the grand juror's questions were false and misleading because defendant did not confess to sexually assaulting Doe. The circuit court further held that the prosecutor was obligated to clarify Kelly's testimony concerning whether defendant had confessed to sexually assaulting Doe and found it significant that the prosecutor did not do so.

¶ 12    The circuit court agreed with the State that, before the juror's questions, the State had presented sufficient evidence to establish probable cause to support the indictment. Nonetheless, the circuit court concluded that Kelly's false and misleading testimony so prejudiced the grand jury proceeding that the indictment must be dismissed with prejudice. The circuit court, therefore, granted defendant's motion to dismiss the indictment with prejudice, precluding the State from reindicting defendant for the alleged criminal sexual assaults.

¶ 13    The State appealed the dismissal pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2017). Applying a *de novo* standard of review, the appellate court affirmed the circuit court's decision to dismiss the indictment with prejudice. 2022 IL App (2d) 210740, ¶¶ 1, 12

¶ 14    The appellate court explained that grounds for challenging the validity of a grand jury's indictment are very limited. *Id.* ¶ 14. However, the appellate court explained that one of the grounds available for challenging an indictment is that the State procured the indictment through prosecutorial misconduct that infringed on the accused's due process rights. *Id.* The appellate court noted that, for a defendant to establish a violation of his or her due process rights based on prosecutorial misconduct before a grand jury, the defendant must show that the due process violation is " 'unequivocally clear' " and that the accused suffered from " 'actual and substantial' " prejudice. *Id.* (quoting *People v. Nolan*, 2019 IL App (2d) 180354, ¶ 10).

¶ 15    The appellate court rejected the State's argument that, in order to establish a due process violation, a defendant must also establish that the State acted intentionally in presenting deceptive or inaccurate evidence. *Id.* ¶ 16. The appellate

- 4 -

court cited its decision in *People v. Oliver*, 368 Ill. App. 3d 690, 696 (2006), where the appellate court held that the State's presentation of a police officer's deceptive testimony denied the defendant due process, regardless of whether the deception was intentional. 2022 IL App (2d) 210740, ¶ 16.

¶ 16    Here, the appellate court considered the transcript of the grand jury proceeding and the video recording of Detective Kelly's interview of defendant and concluded that the State presented inaccurate and deceptive evidence to the grand jury. *Id.* ¶ 17. The appellate court noted that defendant never admitted to Detective Kelly that his sexual encounter with Doe was nonconsensual. *Id.* The appellate court agreed with the circuit court and defendant that Kelly's answers to the grand juror's questions left the grand jury with a false impression that defendant had confessed to the alleged crimes. *Id.* ¶ 18.

¶ 17    Next, in determining whether defendant suffered actual and substantial prejudice, the appellate court concluded that the State's probable cause evidence, apart from Detective Kelly's answers to the juror's questions, was not so compelling that the grand jury would have indicted defendant on that evidence alone. *Id.* ¶ 21. The appellate court explained that Doe was extremely intoxicated and her account of the events that evening, as reported by Detective Kelly, was questionable at best. *Id.* The appellate court found it significant that the grand juror prefaced the clarifying question to Kelly by first noting Doe's extreme intoxication and then asking if there was any evidence beyond Doe's statement to show that defendant had committed the crime. *Id.* According to the appellate court, this implied that at least one grand juror did not think that there was sufficient evidence to establish probable cause. *Id.* The appellate court also emphasized that a confession is probably the most probative and damaging evidence that can be admitted against a defendant *Id.* ¶ 22 (citing *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991)). The appellate court, therefore, concluded that Detective Kelly's misleading suggestion of a confession by defendant likely swayed the grand jury to indict. *Id.* ¶ 23.

¶ 18    The appellate court emphasized that, regardless of whether Detective Kelly intended to deceive, the State had a duty to clarify his testimony when Kelly falsely suggested a confession. *Id.* The appellate court reasoned, "Presumably, had the State asked follow-up questions, Kelly would have clarified that defendant had not

in fact confessed to sexual assault but, rather, had merely admitted to having consensual sex with [Doe]." *Id.* Although the State maintained that the assistant state's attorney who presented the case to the grand jury was unfamiliar with the case, the appellate court found this "questionable practice" was not a sufficient excuse for the State's failure to clarify Kelly's testimony and did not lessen the prejudicial impact of Kelly's "deceptive and inaccurate testimony." *Id.* Accordingly, the appellate court concluded that "there was a clear and unequivocal denial of due process" and that the circuit court properly dismissed the indictment with prejudice. *Id.* ¶ 24.

¶ 19 We granted the State's petition for leave to appeal to review the lower courts' judgments resulting in the dismissal of the grand jury's bill of indictment with prejudice.

¶ 20 II. ANALYSIS

¶ 21 The Illinois Constitution guarantees that persons will not be deprived of their liberty without due process of law. Ill. Const. 1970, art. I, § 2. It also provides that "[n]o person shall be held to answer for a crime punishable by *** imprisonment in the penitentiary unless either the initial charge has been brought by indictment of a grand jury or the person has been given a prompt preliminary hearing to establish probable cause." *Id.* § 7. These two constitutional protections lie at the center of this appeal. Both the circuit court and the appellate court concluded that defendant was denied due process because of prosecutorial misconduct before a grand jury, justifying dismissal of the grand jury's bill of indictment with prejudice.

¶ 22 A. Standard of Review

¶ 23 The lower courts reached their conclusions by reviewing the transcript of the grand jury proceeding as well as the video recording of Kelly's interview of defendant. When ruling on a motion to dismiss an indictment, courts typically consider only the transcript of the proceedings before the grand jury. *People v. DiVincenzo*, 183 Ill. 2d 239, 255 (1998), *abrogated on other grounds by People v. McDonald*, 2016 IL 118882. Our review of the lower courts' decisions in this case

requires us to review the transcript of the grand jury's proceeding and the video recording of Kelly's interview of defendant.[1]

¶ 24    We agree with the lower courts that the issue of whether defendant was denied due process is a question of law reviewable under the *de novo* standard of review. We generally review the trial court's ultimate ruling on a motion to dismiss charges for an abuse of discretion; however, when the issue presented is a purely legal one, the standard of review is *de novo*. *People v. Stapinski*, 2015 IL 118278, ¶ 35. We have previously stated that "[w]hether a defendant was denied due process, and whether that denial was sufficiently prejudicial to require the dismissal of the charges, are questions of law, which are reviewed *de novo*." *Id.*; see *People v. Legore*, 2013 IL App (2d) 111038, ¶ 23 (correctly holding that *de novo* standard of review is applied where the facts about what transpired at the grand jury proceeding are undisputed); *People v. Mattis*, 367 Ill. App. 3d 432, 435-36 (2006) ("because the essential facts concerning what happened at the grand jury proceedings are undisputed, we review *de novo* whether defendant suffered a prejudicial denial of due process that could warrant dismissal").

¶ 25    Under a *de novo* review, we perform the same analysis as the circuit court, and our analysis is completely independent of the circuit court's decision. *People v. Montanez*, 2023 IL 128740, ¶ 80. Once it is determined that a defendant suffered a prejudicial violation of his due process rights, the circuit court's choice of remedy is reviewed for an abuse of discretion. *Stapinski*, 2015 IL 118278, ¶ 35.

¶ 26    Here, we first address the issue of whether the circuit court erred in concluding that defendant was denied due process based on the evidence the State presented to the grand jury. As explained, our review of this issue is *de novo*.

---

[1]As explained in our analysis below, we review the video recording of Kelly's interview of defendant *only* for purposes of determining whether Kelly's testimony before the grand jury was false or misleading, *not* to measure the credibility of Doe's report of the assaults. Resolving the conflict between Doe's and defendant's versions of events is a task for a petit jury, not a grand jury, and the video recording of defendant's interview is not part of the probable cause evidence considered by the grand jury.

¶ 27                    B. Nature and Function of Grand Jury Proceedings

¶ 28          Where the State utilizes a grand jury to bring charges against an accused, the grand jury's task is simple: to investigate and determine whether probable cause exists that the accused individual has committed a crime, thus warranting a criminal trial. A grand jury is a body of laypersons who investigate probable cause free from technical rules. *People v. Jones*, 19 Ill. 2d 37, 42 (1960). During this process, the state's attorney serves as an advisor to the grand jury, informing the grand jury of the charges and the applicable law and presenting evidence for the grand jury to consider. *DiVincenzo*, 183 Ill. 2d at 254; 725 ILCS 5/112-4 (West 2018). "Only the State's Attorney, his [or her] reporter and any other person authorized by the court or by law may attend the sessions of the Grand Jury." 725 ILCS 5/112-6(a) (West 2018). If the grand jury finds probable cause that a person has committed an offense, the State prepares and files with the circuit court a bill of indictment that has been signed by the grand jury's foreman. *Id.* § 112-4(d).

¶ 29          This grand jury process is an invaluable part of our system of criminal justice. The grand jury serves as an accusatory body that brings to trial those who may be guilty of a crime (*United States v. Dionisio*, 410 U.S. 1, 16-17 (1973)), but just as importantly, it also stands as a shield between citizens and the State and secures "the innocent against hasty, malicious[,] and oppressive prosecution." *Wood v. Georgia*, 370 U.S. 375, 390 (1962). It determines whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will. *Id.*; *United States v. Mandujano*, 425 U.S. 564, 571 (1976) ("the grand jury continues to function as a barrier to reckless or unfounded charges"). Therefore, the grand jury's task "is to clear the innocent, no less than to bring to trial those who may be guilty." *Dionisio*, 410 U.S. at 16-17.

¶ 30          This court has emphasized the importance of preserving the historic independence of the grand jury, expressing reluctance to interfere with the indictment process. *People v. Fassler*, 153 Ill. 2d 49, 58 (1992). Therefore, in general, a criminal defendant may not challenge an indictment of a legally constituted grand jury. *People v. Wright*, 2017 IL 119561, ¶ 61. However, there are narrow exceptions to this general rule. *People v. Rodgers*, 92 Ill. 2d 283, 287 (1982).

¶ 31
## C. Grounds for Dismissal of a Grand Jury's Indictment: Denial of Due Process

¶ 32 In section 114-1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-1(a) (West 2018)), the legislature set out statutory grounds for dismissing criminal charges, including grand jury indictments. These legislatively established grounds for dismissal are not exclusive. *People v. Lawson*, 67 Ill. 2d 449, 455-56 (1977). Section 114-1(a) does not provide a basis for the dismissal of an indictment where an accused's due process rights are violated, but neither the prosecutor nor the grand jury is vested with power to proceed without regard to due process. *People v. Sears*, 49 Ill. 2d 14, 35-36 (1971). In addition, grand jury proceedings are an integral part of the court, not the tool of the prosecutor. *Id.* Therefore, we have long recognized the court's corresponding inherent power to supervise and prevent perversion of the grand jury's process. *People v. Boston*, 2016 IL 118661, ¶ 19. This inherent power includes authority to dismiss an indictment where there has been a "clear denial of due process even though that is not a stated ground in section 114-1." *Lawson*, 67 Ill. 2d at 455.

¶ 33 We have cautioned, however, that when courts are asked to dismiss an indictment based on the denial of due process, the courts "must proceed with restraint and ascertain preindictment denial of due process *only with certainty*." (Emphasis added.) *Id.* at 457. The courts' limited use of this inherent power preserves the historic independence of the grand jury. *Sears*, 49 Ill. 2d at 31. Therefore, a defendant seeking to dismiss a grand jury's indictment on due process grounds has the difficult burden of showing that the denial of due process is "unequivocally clear" and that he or she suffered "actual and substantial" prejudice. *People v. Benitez*, 169 Ill. 2d 245, 256 (1996) ("To support a motion to dismiss an indictment on due process grounds, a defendant must show both actual and substantial prejudice."); *Lawson*, 67 Ill. 2d at 456 (the circuit court has inherent authority to dismiss where there has been an "unequivocally clear" denial of due process); *Oliver*, 368 Ill. App. 3d at 694-95; *People v. Holmes*, 397 Ill. App. 3d 737, 741 (2010). In this appeal, we must determine whether defendant has met this high burden.

¶ 34 In our system of justice, the most important protection for an accused is a fair trial where a trier of fact determines whether the State has proven the accused guilty

of an offense beyond a reasonable doubt. *People v. Creque*, 72 Ill. 2d 515, 527 (1978). A grand jury proceeding is part of the accusatory stage of the criminal justice process, not the fair trial stage where a defendant's guilt is ultimately determined. Although the grand jury investigates facts and measures the existence of probable cause, a grand jury does not act as a petit jury, finally adjudicating guilt or innocence, and its proceedings are not minitrials. *Id.* at 528; *People v. J.H.*, 136 Ill. 2d 1, 10 (1990). Its task is merely to assess whether there is adequate basis for bringing a criminal charge, subjecting a defendant to a criminal trial. *United States v. Williams*, 504 U.S. 36, 51 (1992).

¶ 35    Given its limited (albeit important) role, it has always been thought sufficient for the grand jury to hear only the prosecutor's side when making its assessment of probable cause. *Id.* In addition, the State is not bound by technical evidentiary rules and procedures that are required in a trial before a petit jury to ensure the trial's fairness. *Creque*, 72 Ill. 2d at 527-28; *United States v. Calandra*, 414 U.S. 338, 349 (1974) ("Because the grand jury does not finally adjudicate guilt or innocence, it has traditionally been allowed to pursue its investigative and accusatorial functions unimpeded by the evidentiary and procedural restrictions applicable to a criminal trial."). Accordingly, claims of prosecutorial misconduct before a grand jury raise different due process implications than claims of prosecutorial misconduct before a petit jury.

¶ 36    Also, a defendant may not challenge the adequacy and sufficiency of the evidence underlying an indictment except where the State presented no evidence connecting the accused to the offense charged. *Creque*, 72 Ill. 2d at 527; *Rodgers*, 92 Ill. 2d at 286 ("there are numerous cases which indicate that a court will not consider the adequacy or sufficiency of the evidence" presented to a grand jury). When a defendant claims that the evidence presented to the grand jury does not support the charges, "[w]e require *only* that there be *some* evidence relative to the charge." (Emphases added.) *Rodgers*, 92 Ill. 2d at 290; see *Calandra*, 414 U.S. at 344-45 (1974) ("the validity of an indictment is not affected by the character of the evidence considered"). Here, defendant maintains that he was denied due process stemming from prosecutorial misconduct committed before the grand jury, but he does not dispute that the State presented *some* evidence to the grand jury connecting him to the commission of the charged offenses.

D. Grounds for Dismissal of an Indictment:
                              Prosecutorial Misconduct

¶ 38        We have held that a defendant may challenge an indictment that is procured through prosecutorial misconduct but that the misconduct must rise to the level of deprivation of due process or a miscarriage of justice (*DiVincenzo*, 183 Ill. 2d at 257), which, as stated above, must be unequivocally clear in the record (*Lawson*, 67 Ill. 2d at 456; *Oliver*, 368 Ill. App. 3d at 696-97). In *DiVincenzo*, we gave examples of prosecutorial misconduct before a grand jury that *may* result in the denial of a defendant's due process rights: deliberately or intentionally misleading the grand jury, using known perjured or false testimony, or presenting other deceptive or inaccurate evidence. *DiVincenzo*, 183 Ill. 2d at 257.

¶ 39        A defendant seeking to have a grand jury's indictment dismissed on grounds of prosecutorial misconduct faces a formidable task. *People v. Jackson*, 64 Ill. App. 3d 307, 310 (1978). This court has previously noted the rarity in which Illinois courts will dismiss a grand jury's indictment on this basis. *J.H.*, 136 Ill. 2d at 12 ("Defendant readily acknowledges, 'No Illinois case to date dealing with prosecutorial misconduct has found denial of due process established with requisite certainty to warrant dismissal of an indictment' and 'no case since *Boone v. The People*, [148 Ill. 440 (1894),] has found fundamental perversion of the grand jury process itself.' "); accord *State v. Young*, 720 P.2d 965, 970 (Ariz. Ct. App. 1986) ("a dismissal of an indictment with prejudice on the ground of prosecutorial misconduct is rare"); *State v. Russell*, 950 A.2d 418, 430 (R.I. 2008) ("As we have stated many times, the dismissal of an indictment because of prosecutorial misconduct is an extraordinary remedy."); *United States v. De Rosa*, 783 F.2d 1401, 1404 (9th Cir. 1986) (the court's power to dismiss an indictment on the ground of prosecutorial misconduct is " 'rarely invoked' " (quoting *United States v. Samango*, 607 F.2d 877, 881 (9th Cir.1979))); *United States v. Kilpatrick*, 821 F.2d 1456, 1465 (10th Cir. 1987) ("Dismissals of indictments for prosecutorial misconduct are rarely upheld."); *United States v. Overmyer*, 899 F.2d 457, 465 (6th Cir. 1990) (grand jury indictments are presumed valid and a court must "exercise extreme caution in dismissing an indictment for alleged grand jury misconduct"); *United States v. Fuchs*, 218 F.3d 957, 964 (9th Cir. 2000) (dismissal of an indictment for prosecutorial misconduct is considered a drastic step and is generally disfavored as a remedy); *United States v. Anderson*, 778 F.2d 602, 606 (10th Cir. 1985)

("Dismissal of an indictment returned after deliberation by a grand jury is a very drastic action.").

¶ 40                    E. Standard for Determining Prejudice From Prosecutorial
                              Misconduct Before a Grand Jury

¶ 41       To establish that prosecutorial misconduct before a grand jury resulted in actual and substantial prejudice, a defendant must show more than its mere existence. This is true because prosecutorial misconduct before the grand jury "can usually be 'remedied adequately by means other than dismissal' which 'allow the court to focus on the culpable individual rather than granting a windfall to the unprejudiced defendant.' " *J.H.*, 136 Ill. 2d at 12 (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988)); see *De Rosa*, 783 F.2d at 1405 ("Constitutional grounds for dismissal are limited *** because the grand jury's determination is a preliminary one and because the full panoply of constitutional protection will be available at trial.").

¶ 42       In *Bank of Nova Scotia*, 487 U.S. at 256, the United States Supreme Court adopted the following standard for determining prejudice stemming from prosecutorial misconduct before a grand jury:

"We adopt for this purpose, at least where dismissal is sought for nonconstitutional error, the standard articulated by Justice O'CONNOR in her concurring opinion in *United States v. Mechanik*, [475 U.S. 66, 78 (1986) (O'Connor, J., concurring, joined by Brennan and Blackmun, JJ.)]. Under this standard, dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 256 (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring, joined by Brennan and Blackmun, JJ.).[2]

_____

[2]The *Bank of Nova Scotia* Court distinguished this standard from cases where there have been fundamental errors in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice, such as

¶ 43 Similarly, in *DiVincenzo* this court stated, "To warrant dismissal of the indictment, [a] defendant must \*\*\* show that the prosecutors prevented the grand jury from returning a meaningful indictment by misleading or coercing it." *DiVincenzo*, 183 Ill. 2d at 258. The misconduct must have affected the grand jury's deliberations. *Id.* at 257.

¶ 44                    1. The Record in the Present Case Does Not Establish a
                       Due Process Violation With Unequivocal Clarity

¶ 45 With the above principles in mind, we turn to the question of whether defendant in the present case *unequivocally* established a *clear* denial of his due process rights stemming from prosecutorial misconduct before the grand jury. Upon review of the transcript of the grand jury proceeding and the video recording of Kelly's interview of defendant, our answer to that question is a resounding "no."

¶ 46 The only witness to testify at the grand jury proceeding was Kelly, who told the grand jurors about Doe's report of the alleged sexual assault. Kelly's testimony plainly informed the grand jurors that the State was accusing defendant of committing acts of sexual intercourse with Doe when she was unable to give consent due to her extreme intoxication and that the basis of this accusation was Doe's report of the incident to Kelly.

¶ 47 Kelly explained to the grand jury that Doe reported that she drank so much on the night of the incident that she was falling down at the bar and needed assistance getting into defendant's car so he could take her home. Defendant and Doe arrived at Doe's house sometime after midnight, and they entered Doe's house into a mudroom where a couch was located. Doe reported that she collapsed on the couch and told defendant that she was good, meaning that defendant could leave. Relaying what Doe reported to him, Kelly told the grand jury that defendant then removed Doe's pants and underwear and had sexual intercourse with her on the couch in the mudroom. Doe told Kelly that she was in and out of awareness at this time due to her intoxication. Doe reported that she next became aware of being in her bedroom,

racial or gender discrimination in selection of grand jurors. *Bank of Nova Scotia*, 487 U.S. at 256-57 (citing *Vasquez v. Hillery*, 474 U.S. 254, 260-64 (1986), and *Ballard v. United States*, 329 U.S. 187 (1946)). The present case does not present a claim of fundamental error allowing for the presumption of prejudice.

but she did not recall how she got there with her shoes off. Doe reported that defendant was licking her feet and then had sexual intercourse with her a second time in the bedroom. Doe claimed that she did not perform any sexual acts on defendant and that, because of her intoxication, she would not have been able to do so.

¶ 48　　Kelly's recitation of Doe's version of the events preceded any questions by the grand jurors about Doe's report of the incident. Kelly gave the grand jurors Doe's version of the events at this initial accusatory stage of the criminal process where, as explained above, it is sufficient that the grand jury hear only from the prosecution in determining whether probable cause exists to require defendant to submit to a criminal trial. Kelly's testimony plainly established that Doe reported two incidents of sexual intercourse committed by defendant without her consent and when she was in a state of being incapable of giving consent. This was, without question, *some* evidence connecting defendant to the commission of two incidents of criminal sexual assault from which the grand jury could vote to return a true bill of indictment.

¶ 49　　At the conclusion of Kelly's testimony, the prosecutor asked the grand jury whether anyone had any questions for Kelly. A single grand juror took this opportunity to ask Kelly questions. None of the other grand jurors had any questions about the State's legally sufficient probable cause evidence.

¶ 50　　The transcript of the grand jury proceeding offers no insight into the questioning juror's unspoken thought process in asking questions beyond the mere words the juror used to ask the questions. The inquiring grand juror asked, "Besides that she said that *this* occurred, was there any other evidence that *he* actually did *this* to her?" (Emphases added.) This is a vague and nonspecific question that is subject to multiple interpretations, as the question's phrasing provides no clarity on which specific part of Kelly's testimony it addresses.

¶ 51　　Specifically, we do not know from reading the transcript whether the juror, in asking this initial question, was concerned with evidence that "this" occurred or evidence that "he" did this to her. The juror's emphasis could be on "he" or "this." If the former, then the juror inquired about additional evidence concerning the

identity of the perpetrator.[3] If the latter, then there is an additional layer of uncertainty concerning whether "this" referred merely to sexual intercourse or whether "this" referred more specifically to unconsented sexual intercourse. The transcript offers no insight into what specifically "this" refers to and offers no basis for resolving this uncertainty other than pure speculation.

¶ 52    Upon being presented with this grand juror's uncertain inquiry, Kelly appropriately responded, "I'm not completely sure I understand the question." The record, therefore, establishes Kelly's confusion about the juror's question and that Kelly sought clarification so he could accurately address the juror's concern.

¶ 53    The juror then attempted to clarify, but the juror's clarification was equally unrevealing with respect to the juror's specific concern. When Kelly stated that he did not understand the question, the juror responded: "You said the person was extremely intoxicated, correct?" Kelly replied, "Correct." The juror then asked, "How do we know that *the person* she claims did this to her did *it* to her?" (Emphases added.)

¶ 54    Here again, in reading the transcript, we are left only to guess whether the juror was concerned with how do we know "the person" who did it to her or whether the juror was concerned with how do we know the person did "it" to her. If the latter, we cannot tell if the juror's use of the term "it" was a reference merely to sexual intercourse or more specifically a reference to nonconsensual sexual intercourse. There is no basis in the record to resolve these uncertainties.

¶ 55    Accordingly, the juror's vague questioning presents three possibilities concerning the juror's unspoken state of mind, and two of the possibilities result in no misleading testimony, much less an unequivocally clear denial of due process. These speculative possibilities are the antithesis of the clarity and certainty a defendant is required to show to justify dismissal of an indictment on the basis of a due process violation.

---

[3]Although the jury was aware that the State was accusing only defendant as being the person who committed the assaults, contrary to defendant's assertion and the circuit court's conclusion in its order, this fact does *not* eliminate the possibility that the inquiring juror questioned the credibility of Doe's identification of defendant as the perpetrator.

¶ 56    As stated, it is possible that the juror could have questioned Kelly because the juror was uncertain whether Doe was reliable in identifying the person who "actually did this to her," in the juror's own words. If so, the juror apparently wanted to know from Kelly of the existence of any further evidence that supported Doe's identification of defendant as the person who "did this to her." If this was the juror's concern, Kelly's response that defendant "told me he did" was not misleading but instead accurately suggested to this juror that defendant told Kelly that he was the person who had sexual intercourse with Doe on the evening in question.

¶ 57    It is also possible that the juror questioned Kelly because the juror was uncertain with respect to Doe's reliability in reporting that sexual intercourse occurred at all on the evening in question. Again, if this was the juror's concern, Kelly's response to the juror that defendant "told me he did" was not misleading but accurately suggested to this juror that defendant admitted to having sexual intercourse with Doe.

¶ 58    Defendant cannot convincingly assert that he established an unequivocally clear deprivation of his due process under these tenuous facts, where Kelly's answers to the juror's questions were not misleading under these two distinctly plausible interpretations of the record in a *de novo* review. Under either of these two possible interpretations of the juror's uncertain questions, defendant was not denied due process due to misleading testimony. Defendant cites no reported case where an indictment is dismissed on due process grounds when the record is entirely uncertain whether any misleading testimony was given whatsoever, as is the case here.

¶ 59    Defendant urges us to adopt a third interpretation of the record to the exclusion of the two other possibilities stated above. According to defendant, the record unquestionably establishes that the juror questioned Kelly because the juror had doubts about Doe's claim of being unable to give consent to sexual intercourse due to her extreme intoxication. It is only under this interpretation of the juror's questions that we can reach the conclusion that Kelly misled the inquiring juror to believe that defendant confessed to having nonconsensual sexual intercourse with Doe. However, nothing in the record lends support to the conclusion that this

interpretation of the grand juror's unspoken state of mind is the only plausible interpretation over and above the other two possible interpretations stated above.

¶ 60 Accordingly, we can affirm the lower courts' conclusion that Kelly misled this grand juror only if we elevate this one speculative conclusion of the juror's concern over the others when there is no basis in the record to do so. Defendant has the heavy burden to justify dismissal of the indictment, and based on the record before us, we simply cannot conclude, unequivocally, that prosecutorial misconduct affected the grand jury's deliberations when the record is entirely unclear whether Kelly's answer to the juror's vague inquiry misled the inquiring grand juror or any of the other grand jurors in any way whatsoever. The record is entirely uncertain concerning whether Kelly gave misleading testimony because that conclusion depends on the unknowable concern of the questioning juror. To hold that defendant "unequivocally" established a prejudicial due process violation, we have to reach the untenable conclusion that the juror's intent in asking the imprecise questions is clearly ascertainable from the record, which it is not.

¶ 61 2. Defendant Cannot Establish Actual and
Substantial Prejudice

¶ 62 Even if we could discern from the record that defendant's interpretation of the juror's questions is unequivocally clear, Kelly's answer to the juror's inquiry still would not be a basis for dismissal of the indictment because defendant cannot show actual and substantial prejudice stemming from the question and answer colloquially between Kelly and the juror.

¶ 63 To fulfill its constitutional role as an intermediary between citizens and the State, the grand jury is asked merely to determine whether there is a sufficient evidentiary basis to subject the accused to a fair criminal trial. *DiVincenzo*, 183 Ill. 2d at 254. Unlike petit juries, grand juries do not have to be unanimous. See 725 ILCS 5/112-2(a) (West 2018) ("The Grand Jury shall consist of 16 persons, 12 of whom shall be necessary to constitute a quorum."); *id.* § 112-4(d) ("If 9 grand jurors concur that the evidence before them constitutes probable cause that a person has committed an offense the State's Attorney shall prepare a Bill of Indictment charging that person with such offense.").

¶ 64 Here, the State presented sufficient evidence from which nine grand jurors could return a true bill of indictment, based solely on Kelly's testimony prior to Kelly attempting to answer questions from a single grand juror. Nothing in the record suggests that this lone juror's questions were indicative of any uncertainty of any of the other grand jurors with respect to the State's legally sufficient probable cause evidence. The lone juror's questions do not translate into evidence of reluctance of any of the other jurors to vote for a true bill of indictment based on Kelly's testimony about Doe's report of the alleged sexual assaults. Therefore, the record does not support a conclusion that the grand jury would not have indicted defendant but for Kelly's answers to the single juror's vague and uncertain questions. See *People v. Torres*, 245 Ill. App. 3d 297, 301 (1993) ("Defendant does not satisfy his burden to establish clearly 'actual and substantial prejudice' merely by demonstrating the possibility of avoiding indictment.").

¶ 65 Moreover, as explained above, courts considering a defendant's request to dismiss an indictment do not weigh the sufficiency of the evidence that the grand jury considered in voting to indict. In *Costello v. United States*, 350 U.S. 359, 363-64 (1956), the Court stated "[i]t would run counter to the whole history of the grand jury institution" to permit an indictment to be challenged "on the ground that there was inadequate or incompetent evidence before the grand jury." In *Williams*, 504 U.S. at 54, the Supreme Court further explained: "It would make little sense, we think, to abstain from reviewing the evidentiary support for the grand jury's judgment while scrutinizing the sufficiency of the prosecutor's presentation." The *Williams* Court, therefore, cautioned that "[a] complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was 'incomplete' or 'misleading.' " *Id.* The *Williams* Court concluded that reviewing facially valid indictments on such grounds " 'would run counter to the whole history of the grand jury institution,' " and " '[n]either justice nor the concept of fair trial requires [it].' " *Id.* at 53-54 (quoting *Costello*, 350 U.S. at 364).

¶ 66 The *Williams* Court's concern is what has occurred in this case. The State presented sufficient probable cause evidence from which 9 of the 12 to 16 grand jurors could find that defendant should submit to a criminal trial. Although one single juror had questions about Doe's report of the assaults due to her intoxication, probable cause is a level of proof that is well short of certainty, and nothing in the

- 18 -

record suggests that the other grand jurors had any confusion about the level of evidence required to establish probable cause.

¶ 67     Here, defendant has utilized the vague and uncertain concerns of a single juror to justify an intrusion on the grand jury's determination of probable cause by recasting a sufficiency of the evidence challenge into a claim of misleading testimony. See 2022 IL App (2d) 210740, ¶ 21 (where the appellate court in this case engaged in an ill-advised assessment of Doe's credibility by noting her extreme intoxication and concluding that her account of the events that evening, as reported by Detective Kelly, was "questionable at best").

¶ 68     This analysis is an improper intrusion on the grand jury's historical independence in conducting its evaluation of probable cause. *Fassler*, 153 Ill. 2d at 61 (defendant repeatedly characterizes the testimony presented before the grand jury as being " 'weak,' 'vague,' 'implausible,' and 'full of inherent contradictions,' " but "[a]n accused may not challenge an indictment on the ground that it is not supported by sufficient evidence where there is *any* evidence to support the indictment" (emphasis added)). Here, a single juror's vague questions did not open the door for a judicial evaluation of the sufficiency or plausibility of Doe's report that she was sexually assaulted by defendant. "Guilt or innocence is to be determined at a fair trial" (*id.*), not in proceedings before the grand jury.

¶ 69     Ideally, the prosecutor or Kelly himself would have asked for additional clarification about the juror's concern, but their failure to do so does not unequivocally establish that defendant would be denied due process if he stood trial on the grand jury's bill of indictment. There are no reported cases supporting the dismissal of an indictment based on speculative conclusions that are unsupported by the record particularly where the record, as here, unequivocally establishes that the State presented the grand jury with sufficient probable cause evidence.

¶ 70     As a comparative example, in *Oliver*, the appellate court affirmed the dismissal of an indictment based on misleading testimony before the grand jury, but in that case, the misleading evidence constituted the *entirety* of the State's probable cause evidence. Specifically, the *Oliver* court concluded that the State presented the grand jury evidence that was deceptive or inaccurate and, as a result, denied the defendant due process. *Oliver*, 368 Ill. App. 3d at 695-96. The appellate court reached this conclusion by determining that, but for the testifying officer's mischaracterization

of the evidence, the grand juries in that case could not have found probable cause to indict because the misleading testimony "establish[ed] probable cause where none existed." *Id.* at 697-99.

¶ 71 In contrast, here, as discussed above, absent Kelly's answers to the juror's questions, the State presented legally sufficient evidence of defendant's connection to the charged offenses, which supported the grand jury's finding of probable cause. Dismissal of an indictment under such facts is improper. See *People v. Rebollar-Vergara*, 2019 IL App (2d) 140871, ¶¶ 60-73 (an officer's grand jury testimony about the defendant's statement could have been presented more clearly and the appellate court did not "condone the ambiguities" in the State's questions, but the appellate court concluded that the defendant failed to meet his burden to show that the error was " 'unequivocally clear' " and resulted in " 'actual and substantial' " prejudice where remaining evidence supported the grand jury's determination of probable cause); *People v. Chatman*, 297 Ill. App. 3d 57, 62 (1998) (courts are reluctant to dismiss an indictment on due process grounds unless the indictment is "*utterly empty*" (emphasis added)); *United States v. Adamo*, 742 F.2d 927, 939 (6th Cir. 1984) (as long as there is "*some* competent evidence to sustain the charge issued by the Grand Jury" (emphasis in original), an indictment will not be dismissed solely on the basis that other evidence presented to the grand jury may have been false).

¶ 72 On appeal, the parties dispute whether a defendant must show that the State's presentation of misleading testimony to a grand jury was intentional rather than merely unintentional in order to secure the dismissal of an indictment. See *People v. Reimer*, 2012 IL App (1st) 101253, ¶ 33 (discussing whether a defendant must show that the State acted intentionally in misstating the law before the grand jury). Under the facts of this case, we need not address this issue for the reasons explained above, where defendant cannot establish a *clear* violation of due process based on prosecutorial misconduct, whether intentional or unintentional, and cannot establish actual and substantial prejudice.

¶ 73 In addition, because the record does not unequivocally establish a denial of defendant's due process rights in requiring him to stand trial on the bill of indictment, we need not consider whether the circuit court abused its discretion in dismissing the indictment with prejudice rather than without prejudice. *Stapinski*,

2015 IL 118278, ¶ 35 (once it is determined that a defendant suffered a prejudicial violation of his due process rights, the circuit court's choice of remedy is reviewed for an abuse of discretion). Here, the circuit court erred in dismissing the indictment, whether with or without prejudice.

¶ 74                                    III. CONCLUSION

¶ 75        Dismissal of the grand jury's bill of indictment under the facts of this case constitutes a speculative intrusion on the grand jury's independent evaluation of probable cause on two separate levels: (1) unwarranted speculation into what the grand juror was thinking in asking vague and imprecise questions about the possible existence of other evidence on an unspecified element of the charged offenses and (2) unwarranted speculation that the lone juror's questions were relevant to the silent grand jurors' evaluation of the legally sufficient probable cause evidence presented by the State. Therefore, the circuit court exceeded its authority in dismissing the indictment on the record before us. Affirming the dismissal of the grand jury's indictment based on the facts of this case would require us to abandon the well-established principle that we tread lightly and only with certainty when considering dismissal of a grand jury's indictment based on a claim of a due process violation. The concepts of justice, due process, and a fair trial are not offended in any way by requiring defendant in this case to stand trial on the grand jury's bill of indictment. The extreme sanction of dismissal of the indictment is not warranted.

¶ 76        In view of the foregoing, we reverse the judgment of the appellate court, reverse the judgment of the circuit court, and remand for further proceedings on the grand jury's bill of indictment.

¶ 77        Judgments reversed.

¶ 78        Cause remanded.

¶ 79        JUSTICE O'BRIEN, dissenting:

¶ 80        I disagree with the majority's conclusion that dismissal of the bill of indictment was error. Because I believe the grand jury proceedings violated defendant's due

process rights, I would affirm the judgment of the appellate court, which affirmed the trial court's dismissal with prejudice of the indictment against defendant due to prosecutorial misconduct.

¶ 81        The majority correctly references the role and sanctity of the grand jury proceedings and the court's reluctance to interfere in those proceedings. *Supra* ¶¶ 27-30. The majority also correctly asserts that an indictment should be dismissed for a due process violation " 'only with certainty' " (emphasis omitted) (*supra* ¶ 33 (quoting *People v. Lawson*, 67 Ill. 2d 449, 457 (1977))) when the violation is " 'unequivocally clear' " and where defendant "suffered 'actual and substantial' prejudice" (*supra* ¶ 33 (citing *People v. Benitez*, 169 Ill. 2d 245, 256 (1996)). In my view, the State's misconduct was unequivocally clear, defendant suffered actual and substantial prejudice, and dismissal of the indictment was done with certainty that the proceedings violated defendant's due process rights.

¶ 82        The majority maintains defendant failed to demonstrate that the violation of his due process rights was "unequivocally clear." In support of its finding against the defendant, the majority relies on the standard used to determine prejudice in an alleged due process violation regarding the propriety of an indictment. *Supra* ¶ 42. The standard dictates dismissal where " ' "the violation substantially influenced the grand jury's decision to indict" or if there is "grave doubt" that the decision to indict was free from the substantial influence of such violations.' " *Supra* ¶ 42 (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988), quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring, joined by Brennan and Blackmun, JJ.)). After hearing Kelly's answer that defendant told Kelly he did it, the questioning juror stated, "That's all I needed to know." The statement is "unequivocally clear" that Kelly's answer convinced the jury to indict. Contrary to the majority's interpretation, that standard supports dismissal of the indictment. As the colloquy between the juror and Kelly demonstrates, the violation substantially influenced the grand jury's decision to indict, and "there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256 (citing *Mechanik*, 475 U.S. at 78). Under the prejudice standard, dismissal of the indictment was warranted.

¶ 83        Because it found there was no misconduct in the State's grand jury presentment, the majority concludes that it does not need to determine whether the State's

misconduct must be intentional to warrant a dismissal. *Supra* ¶ 72. I agree with the majority that we do not need to determine intentionality to reach the proper disposition here. Kelly either purposefully misled the jury or lacked familiarity with the facts of the case he investigated, and likewise, the prosecutor either purposefully failed to correct Kelly or was similarly unaware of the facts of the case due to a lack of preparation. Either way, incorrect information was presented to the members of the grand jury. Arguably, the entirety of Kelly's testimony, including his response to the prosecutor's questions, was misleading or at least inaccurate, and the State failed to correct any of it. Kelly interviewed defendant and was aware or should have been aware that defendant denied he and Doe engaged in anything other than consensual sexual intercourse. Defendant told Kelly that Doe was awake, invited him into her home and her bedroom, and verbally consented several times to engage in sexual intercourse with defendant.

¶ 84    In reaching its conclusion that defendant did not establish the requisite State misconduct to warrant dismissal of the indictment, the majority engages in speculation about what the juror's questions meant, a criticism the majority makes of the appellate court opinion. *Supra* ¶ 67. To support its determination, the majority emphasizes different words in the questions, surmising the juror is not clear about who committed the sexual assault or is unsure whether the sex acts took place and, if they did, whether they were consensual or nonconsensual. However, there was no question about the identity of the alleged assaulter, and there was no discussion during the grand jury proceedings that the sex was consensual. Indeed, the State, in its attempts to maintain Kelly's answers were not misleading, argued below that the juror's questions were directed to the offender's identity, not about whether the sex was consensual. A plain reading of the juror's questions establishes that her concern was why she should believe any assault occurred, not who did it or whether it was consensual. Kelly's answer stated that defendant said he did it; that is, he confessed to committing sexual assault. In fact, when Kelly interviewed defendant, defendant denied any assault occurred and asserted the sex acts were consensual.

¶ 85    The majority dismisses the juror's skepticism by concluding that the evidence presented was sufficient to convince nine other jurors to return an indictment. *Supra* ¶ 64. This conclusion is not based on any evidence. Contrary to the majority's interpretation, the question from the juror and Kelly's answer to it were definitive

regarding defendant's culpability. There was no need for the other jurors to question Kelly after he told them that defendant admitted to the sexual assault. The lack of questioning from other jurors does not establish that the jurors did not question whether there was probable cause to indict prior to the question and answer colloquy. The nature of Kelly's answer shows that the grand jury would not have indicted but for Kelly's answer. *Supra* ¶ 64. As the juror stated, "That's all I needed to know."

¶ 86    Despite the majority's opposite finding, the colloquy between Kelly and the juror resulted in actual and substantial prejudice to defendant. Kelly told the grand jury that defendant confessed to the crime. Contrary to the majority's interpretations of the colloquy, Kelly's answer and the juror's response, reasonably construed, stated that defendant admitted to the alleged offenses. The impact that defendant confessed to sexual assault when he in fact denied the conduct cannot be understated. *People v. Simpson*, 2015 IL 116512, ¶ 36 (" 'a confession is the most powerful piece of evidence the State can offer, and its effect on a jury is incalculable' " (quoting *People v. R.C.*, 108 Ill. 2d 349, 356 (1985))). The majority's implication that Kelly's answer could have meant anything less damning is unsupported by the record.

¶ 87    The majority next declares that defendant is cloaking a sufficiency of the evidence argument as prosecutorial misconduct. *Supra* ¶¶ 67-69. The majority is incorrect. Defendant is not attacking the sufficiency of the evidence; he is attacking the prosecutorial conduct where the only grand jury witness was allowed to present misleading evidence that defendant admitted to the alleged offenses. In challenging the indictment, defendant argued that the State offered misleading evidence and failed to correct it, which resulted in the return of an indictment against him and a denial of his due process rights. At no point does defendant challenge the evidence as anything other than misleading.

¶ 88    The majority acknowledges that "ideally" it would have been better if Kelly's statements were clarified. The State should prepare for grand jury proceedings and present only accurate information to assist the jurors in determining whether to indict. As the trial court found, the prosecutor's lack of familiarity with the case does not excuse the State "from [its] relatively minimal responsibility to protect a defendant's due process rights in the Grand Jury." At the very least, the State should

- 24 -

correct inaccurate and misleading statements by its witnesses. See *People v. Simpson*, 204 Ill. 2d 536, 552 (2001) (defendant's due process rights were violated when "the State allows false testimony to go uncorrected").

¶ 89 The majority decision weakens the function of the grand jury as a shield against the State and condones cursory, perfunctory, and ill-prepared grand jury presentments. See *People v. Nolan*, 2019 IL App (2d) 180354, ¶ 23 (noting the "perfunctory way the case was presented to the grand jury"). The *Nolan* court rejected defendant's claim of prosecutorial misconduct, as there was no admission or documentary evidence to establish the inaccuracy of the grand jury testimony, unlike the circumstances in this case. *Id.* ¶ 19. In other cases where there was some objective evidence to establish the evidence presented was misleading, dismissal of the indictment premised on allegations of prosecutorial misconduct was upheld. *Id.* ¶ 12; see *People v. Oliver*, 368 Ill. App. 3d 690, 696 (2006) (where State admitted the testimony of its witness was misleading, the reviewing court found defendant was denied due process by the State's misconduct).

¶ 90 In *People v. Hunter*, 298 Ill. App. 3d 126 (1998), the State sought an indictment against the defendants for involuntary manslaughter where the couch they were lowering from a second story window fell and killed a person on the sidewalk below. A juror asked the State's witness, a police officer, whether either defendant had stated that "the couch slipped, defendants slipped, the couch was already falling, or defendants could not stop the couch." *Id.* at 128. The officer testified they had not. *Id.* However, in a written statement provided to law enforcement, one defendant said the rope they were using to lower the couch slipped and caused the couch to fall. *Id.* The trial court dismissed the indictment. *Id.* The reviewing court found dismissal of the indictment was proper because the defendant's due process rights were violated by the witness's misleading testimony and the record supported the finding. *Id.* at 130. In determining the issue presented of whether the State could reindict the defendants after dismissal for prosecutorial misconduct, the *Hunter* court further found that, if the State's witness had answered the question truthfully, it was distinctly possible the grand jury would not have returned an indictment. *Id.* at 131. The same conclusion applies here.

¶ 91 Finally, I would find the trial court did not abuse its discretion in dismissing the indictment with prejudice. *People v. Stapinski*, 2015 IL 118278, ¶ 35 (whether a

trial court properly dismissed an indictment with prejudice for a due process violation is reviewed for an abuse of discretion). The import of the grand jury requires that the prosecutor appearing before it "be prepared, with full and accurate knowledge of the facts." *People v. Rebollar-Vergara*, 2019 IL App (2d) 140871, ¶ 113 (Jorgensen, J., specially concurring). That preparation includes reviewing testimony with the State's witnesses and verifying the facts they present. *Id.* Sufficient preparation also requires that clear and unambiguous questions be posed to the jury. *Id.* Here, the State failed to fulfill its obligation to have the grand jury proceedings conducted by a prosecutor prepared to present the State's case. Dismissal with prejudice will serve to deter future grand jury presentments based on misleading evidence. See *Hunter*, 298 Ill. App. 3d at 131-32 ("[i]f the police and prosecution know that perjured testimony will lead to the dismissal with prejudice of their cases, they will be careful to use only truthful testimony"). I would affirm dismissal of the indictment with prejudice.

¶ 92     For these reasons, I dissent.


¶ 93     JUSTICES NEVILLE and CUNNINGHAM join in this dissent.