2025 IL App (1st) 242096-U

SECOND DIVISION
January 28, 2025

No. 1-24-2096B

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | 24 CR 0684701 |
| | ) | |
| GREGORY WILSON, | ) | Honorable |
| | ) | Shauna Boliker, |
| Defendant-Appellant. | ) | Judge Presiding |

---

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Van Tine and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. State did not commit misconduct in proffer at detention hearing. State met its burden to detain defendant before trial.

¶ 2    Defendant Gregory Wilson stands charged, among other things, with vehicular hijacking in connection with the carjacking of a woman at a gas station in south Chicago last April. The State filed a verified petition to detain Wilson before trial. After a hearing, the court granted the petition and remanded Wilson to the Cook County Jail. He appeals, alleging the State committed prosecutorial misconduct and failed to meet its burden to detain him. We affirm.

¶ 3    We take the facts from the parties' proffers at the initial detention hearing and at the hearing on Wilson's subsequent motion for relief. The crimes with which Wilson is charged

occurred on April 17, 2024. Shortly after 9:30 a.m., the alleged carjacking victim (her name was never given) pulled into an Amoco gas station on the south side of Chicago to refill her 2020 Nissan SUV. As she got out of the car, a man (later identified as Wilson) approached her from behind while mumbling to himself. He was wearing a dark jacket, blue jeans, and blue Croc shoes with a Bears logo.

¶ 4    Wilson approached the complainant and asked her for a ride. When she refused, defendant lunged at her and tried to grab her debit card from her hand. Though she evaded him at first, Wilson then reached into the breast area of his jacket, which bulged, and verbally threatened the alleged victim.

¶ 5    Wilson then forcibly took the keys from the complainant's hands, got into the Nissan, and drove off. The complainant called the police. On the day of the incident, police showed her a photo array that included Wilson, but she identified someone other than Wilson as the carjacker.

¶ 6    During the investigation, police recovered surveillance camera footage from the gas station. The video showed that, on the morning of April 17, a black Jeep pulled into the Amoco gas station and parked. A man wearing a dark jacket, blue jeans, and blue Croc shoes with a Bears logo (allegedly Wilson) got out of the Jeep and went into the convenience store. A woman in the car, referred to only as "Witness Z" in the proffer, was seated in the front passenger seat. While the man was inside the store, Witness Z can be seen on the footage climbing over into the driver's seat. Witness Z then drove off, with the man running from the store and briefly chasing after her on foot. Police later determined that Witness Z was the registered owner of the Jeep.

¶ 7    Officers later pulled over the Jeep and questioned Witness Z about what happened at the gas station. She told them that Wilson was her boyfriend. The police detained her. She then gave the officers her cell phone and showed them text messages that Wilson had purportedly sent her.

In those photos, defendant can be seen sitting in the driver's seat of the complainant's Nissan as he was driving on the highway.

¶ 8       Witness Z gave Wilson's cell phone number to the officers, who obtained a search warrant for both his and Witness Z's mobile phones. That investigation uncovered that the phones were together at the same time and place just before the vehicular hijacking. Additional cell phone data showed that the phones were separated when Wilson sent Witness Z photos of himself driving the Nissan. Later, Witness Z identified Wilson as the man in the surveillance video. Police later showed Witness Z's mother, identified only as "Witness P," still photos of the gas station surveillance video. Witness P identified the man in the photos as Wilson.

¶ 9       Police arrested Wilson on June 19, 2024. He gave a statement to investigators. He said he went to the gas station with Witness Z, his fiancée, driving a Jeep that Wilson said he owned. While he was in the store, someone he did not know stole the Jeep from the gas station. He chased after the Jeep, but it got away. So Wilson then went back to the gas station, approached another woman, took her Nissan and drove it away, later abandoning it.

¶ 10      In aggravation, the State noted that Wilson had a 2019 felony conviction for aggravated unlawful use of a weapon, for which he received two years' probation terminated unsatisfactorily. His criminal history also included a 2019 conviction for battery, a 2020 conviction for aggravated assault with a deadly weapon, convictions in 2020 for criminal damage to property and assault, and a 2024 conviction in Indiana for resisting arrest, for which he was currently on probation.

¶ 11      Wilson highlighted that, while he did give a statement to police, there were questions about whether interviewing officers violated Wilson's *Miranda* rights. He also claimed that the State did not meet its burden of showing by clear and convincing evidence that he had committed

the crime, that he was a clear and present threat to the community, or that any condition or set of conditions would negate that threat and allow him to be released. Wilson noted that he was a lifelong resident of Cook County, lived with his grandmother, and took care of her and his two children by working in construction.

¶ 12    The court sought the input of the pretrial services officer, who provided this assessment: "Yes to the violence flag. New criminal activity four, failure to appear two. The score coincides with level 3."

¶ 13    The court denied Wilson pretrial release. The court stressed that the incident was captured on camera, that Witnesses Z and P each identified Wilson as the man in the video stealing the car, and that Wilson confessed. The court also noted that this was not the first time Wilson had violated the terms of probation.

¶ 14    Wilson filed a motion for relief, asking the court to reconsider its decision. He argued that prosecutors misrepresented the evidence against him. For one, the State had proffered that the complainant identified defendant as the perpetrator when, in fact, the complainant identified someone other than Wilson in the photo array. Second, he argued, the State's proffer had made it seem as if Wilson, in his statement, could be directly quoted as saying he "approached another woman at the gas station where he took her Nissan from her," when in fact that was not a quote. Wilson likewise claimed more generally that the State failed to meet its burden of proof.

¶ 15    The court denied the motion. Wilson appeals. He has not filed an additional memorandum, electing to stand on the arguments in his motion for relief. The State has filed its own memorandum in opposition.

¶ 16    Under the new pretrial-release provisions in state law, defendants are presumed eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022). The State may detain an

accused if it establishes that the charged offense is eligible for detention and then proves, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant committed an offense which qualifies them for pretrial detention; (2) the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case; and (3) no condition or combination of conditions can mitigate that real and present threat. *Id.* § 110-6.1(e).

¶ 17    Though the appellate courts have split on the standard of review of detention orders, and our supreme court has not yet settled that split (see *People v. Morgan*, 2024 IL App (4th) 240103, *pet. for leave to appeal granted*, No. 130626 (June 11, 2024)), we need not resolve that issue here; our conclusion would be the same under any standard of review. See *People v. Vance*, 2024 IL App (1st) 232503, ¶ 20.

¶ 18    We start with whether the State met its burden to detain Wilson. We agree with the trial court that the State presented clear and convincing evidence that the proof is evident or the presumption great that Wilson committed the crimes charged. Surveillance video captured a man whom two people identified as Wilson at the convenience store. He is seen confronting the complainant, and forcibly taking her keys, and driving off in her Nissan. Police later recovered photographs of Wilson in the car, which he texted to his girlfriend. And lastly, Wilson confessed to police that he took the Nissan after his girlfriend left him at the convenience store.

¶ 19    Wilson argues that his confession is inadmissible because police violated his *Miranda* rights. See *Miranda v. Arizona*, 283 U.S. 436 (1966). He may one day prevail on that argument, but at a detention hearing, a defendant may not move to suppress evidence or a confession; rather, evidence that may have been the byproduct of an improper interrogation is relevant in assessing the weight of the evidence against the defendant. 725 ILCS 5/110-6.1(f)(6) (West

2022). Even setting aside Wilson's statement to police for the sake of argument, the remaining evidence was more than sufficient to meet the State's burden on the first element.

¶ 20    Regarding the State's proof that Wilson posed a real and present threat to the safety of any person or persons or the community, Wilson argues that the State offered no specific proof but rather made general assertions about the violent nature of robberies and carjackings in general.

¶ 21    The evidence established that, upon being abandoned at a gas station in a crowded part of Chicago, Wilson chose to steal the complainant's car after she refused to give him a ride, threatening her with violence by suggesting he had a weapon in his jacket, then forcibly took the complainant's keys and drove off in her car. Beyond the allegations in the case, Wilson's criminal history included firearm and violent convictions. And pretrial services "flagged" Wilson for violence. We find the evidence sufficient on this factor.

¶ 22    We also uphold the finding that no condition or combination of conditions could mitigate that threat. The court noted that Wilson was already on a form of monitoring—probation for his misdemeanor resisting charge in Indiana—at the time he allegedly committed this crime. Failing to comply with probation "does not lend any support for allowing less restrictive conditions." *People v. Lee*, 2024 IL App (1st) 232137, ¶ 33. And this was the second time, not the first, that he violated the terms of probation. The court was rightly concerned that Wilson might disregard the terms of any restrictions placed on him pending trial.

¶ 23    Wilson also claims that the State committed prosecutorial misconduct when it misrepresented key facts during its proffer at its detention hearing, leading to a miscarriage of justice on par with an intentional misrepresentation in a grand jury proceeding warranting dismissal of an indictment. See *People v. Basile*, 2024 IL 129026, ¶ 32. The principal

misrepresentation was the State's assertion that the complainant identified Wilson as the perpetrator, when in fact she picked out someone other than Wilson in the photo array. The State also purportedly attributed quotes to Wilson during his statement to the police.

¶ 24    The State responds that its proffer was a summary of Wilson's confession and not a direct quote. And though the complainant did not identify Wilson, she did identify him by clothing, and a man wearing that clothing was identified on the video by other witnesses as Wilson.

¶ 25    We find no basis for pretrial release as some kind of sanction against the State. First, unlike dismissal of indictments based on the government's misrepresentation (see 725 ILCS 5/114-1(a) (West 2022)), Wilson has cited no statutory basis for the automatic pretrial release of a detainee as a sanction for a similar violation. That is likely because detainees are granted unlimited opportunities to secure pretrial release while they await trial. See 725 ILCS 5/110-6.1(i-5) (West 2024). Wilson was (and still is) free to point out that the evidence proffered at the initial detention hearing was inaccurate or incomplete based on new discovery, proffer new and updated evidence, and argue that the new facts or circumstances merit his release. See *People v. Walton*, 2024 IL App (4th) 240541, ¶ 28 (defendant may present new information or change in circumstance for relief under section 110-6.1(i-5)). Wilson could correct any of the State's "misrepresentations" at a later hearing, as he essentially did here with his Motion for Relief.

¶ 26    Second, to justify a sanction akin to dismissal of an indictment, at a minimum a defendant must show "actual and substantial prejudice." *Basile*, 2024 IL 129026, ¶ 32. Here, even if the State incorrectly stated that complainant identified Wilson, there was ample independent evidence of Wilson's guilt. Two other witnesses identified Wilson on the surveillance tape; Wilson sent photos of himself inside the carjacked vehicle; and Wilson confessed to the crime. The misrepresentation was hardly prejudicial under these circumstances.

¶ 27    And for what it's worth, Wilson does not even allege that any misstatement by the State was an intentional act. Indeed, he conceded at the hearing on his motion for relief that he was *not* claiming that this misrepresentation was "purposeful, intentional, bad faith, anything like that," agreeing that the misrepresentation was merely "inadvertent."

¶ 28    Simply put, we find nothing here coming close to a miscarriage of justice or misconduct sufficient to warrant a sanction against the State.

¶ 29    In sum, the State met its burden of denying defendant pretrial release. And we find no basis for a finding of prosecutorial misconduct. We affirm the judgment of the trial court.

¶ 30    Affirmed.